888 So.2d 1 (2004)
Lawrence TAYLOR, Petitioner,
v.
SCHOOL BOARD OF BREVARD COUNTY, Respondent.
No. SC01-1924.
Supreme Court of Florida.
August 19, 2004.
Joseph H. Williams of Troutman, Williams, Irvin, Green and Helms, P.A., Winter Park, FL, for Petitioner.
Tracy Raffles Gunn of Fowler, White, Boggs and Banker, P.A., Tampa, FL, for Florida Defense Lawyers Association, Amicus Curiae.
*2 Michael H. Bowling of Bell, Leeper and Roper, P.A., Orlando, FL, for Respondent.
Kelley B. Gelb of Krupnick, Campbell, Malone, Roselli, Buser, Slama, Hancock, McNelis Liberman and McKee, P.A., Fort Lauderdale, FL, for Academy of Florida Trial Lawyers, Amicus Curiae.
PER CURIAM.
We have for review Taylor v. School Board of Brevard County, 790 So.2d 1156 (Fla. 5th DCA 2001), which expressly and directly conflicts with the decision in Lopez v. Vilches, 734 So.2d 1095 (Fla. 2d DCA 1999). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons set forth below, we approve the Fifth District's decision in Taylor holding that petitioners' claim against the school board based upon the negligence of a co-employee was statutorily barred under the exclusive remedy provisions of the Florida Workers' Compensation Law.

FACTS
While performing his duties as a school bus attendant, Taylor was injured when a school bus wheelchair lift fell on him because of a loose emergency release pin plate. See Taylor, 790 So.2d at 1156. The lift's lock assembly had been repaired four months prior to the lift falling on Taylor, and the lift was adjusted and re-positioned by a school mechanic one week before Taylor's injury. See id. at 1157.
Taylor brought suit against the school board based upon the alleged negligence of the school board bus maintenance personnel in its repairs to the lift. See id. Taylor filed a motion for partial summary judgment seeking an adjudication that he and the school board mechanics were involved in unrelated work and, hence, the school board was not entitled to immunity under the workers' compensation laws. See id. The school board filed a cross-motion for summary judgment, claiming that it was immune from suit according to the Florida's Workers' Compensation Law and that the unrelated works exception to the employer's immunity did not apply. See id. After a hearing on the motions, the trial court denied Taylor's motion and entered summary judgment in favor of the school board. See id.
On appeal, the Fifth District Court of Appeal affirmed the trial court's ruling, explaining that the employees involved were not engaged in unrelated works:
It is undisputed that both Taylor and the alleged negligent mechanics worked out of the same transportation facility and that Taylor, as a part of his job, was responsible for the operation of the wheelchair lift while the mechanics, as a part of their job, were responsible for the lift's maintenance and repair. Under these circumstances, we agree with the trial court's application of the statute.
Id. at 1157-58. This review proceeding followed based upon an assertion of conflict with the Second District's decision in Lopez.

WORKERS' COMPENSATION LAW
The Florida Legislature has adopted a comprehensive scheme for workers' compensation that generally provides workers' benefits without proof of fault and employers immunity from tort actions based upon the same work place incident. The Legislature has also expressly declared the legislative intent behind the Workers' Compensation Law:
It is the intent of the Legislature that the Workers' Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to *3 the employer. It is the specific intent of the Legislature that workers' compensation cases shall be decided on their merits. The workers' compensation system in Florida is based on a mutual renunciation of common-law rights and defenses by employers and employees alike. In addition, it is the intent of the Legislature that the facts in a workers' compensation case are not to be interpreted liberally in favor of either the rights of the injured worker or the rights of the employer. Additionally, the Legislature hereby declares that disputes concerning the facts in workers' compensation cases are not to be given a broad liberal construction in favor of the employee on the one hand or of the employer on the other hand, and the laws pertaining to workers' compensation are to be construed in accordance with the basic principles of statutory construction and not liberally in favor of either employee or employer. It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker. Therefore, an efficient and self-executing system must be created which is not an economic or administrative burden. The Division of Workers' Compensation shall administer the Workers' Compensation Law in a manner which facilitates the self-execution of the system and the process of ensuring a prompt and cost-effective delivery of payments.
§ 440.015, Fla. Stat. (1999). This Court has also described the basic purpose behind workers' compensation law as twofold:
(1) [T]o see that workers in fact were rewarded for their industry by not being deprived of reasonably adequate and certain payment for workplace accidents; and (2) to replace an unwieldy tort system that made it virtually impossible for businesses to predict or insure for the cost of industrial accidents. See McLean v. Mundy, 81 So.2d 501, 503 (Fla.1955).
De Ayala v. Florida Farm Bureau Cas. Ins. Co., 543 So.2d 204, 206 (Fla.1989).

THE "UNRELATED WORKS" EXCEPTION
Notwithstanding its provision for a general immunity scheme for employers and employees and the exclusive remedy provided under the Workers' Compensation Law, the Legislature created an exception as to the immunity of fellow employees for cases involving "employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment." § 440.11(1), Fla. Stat. (1999)[1] (emphasis supplied).

*4 Lopez

In Lopez, a case involving facts similar to those in Taylor, Lopez was injured when the work van he was operating for a funeral home business malfunctioned. See Lopez, 734 So.2d at 1096. Lopez brought suit against fellow employees, alleging that they negligently maintained the van. See id. The trial court entered final summary judgment in favor of the employee-defendants, but the Second District reversed, advancing the theory that "these cases might be reconciled by applying a test based on the physical location where the employees were primarily assigned and the unity of their business purpose." Id. at 1097. The Lopez court found that "[t]he physical location of [the co-employees'] work appears to be separate and their specific purpose, general funeral home duties versus vehicle maintenance, appear distinct." Id. But see Lopez, 734 So.2d at 1098 (Quince, Associate Judge, dissenting) ("All of [the employees] have some duties related to the van in question.").

ANALYSIS
Here we are faced with different outcomes on similar facts in the conflicting district court decisions. On the one hand, in Taylor, the school bus attendant and the school bus mechanic were both employed by the school board and both had jobs that dealt with the bus: the attendant interacted with students who rode the bus, and the mechanic maintained and repaired the bus. The Fifth District found that the key elements of the two employees' jobs were the facts that they worked "out of the same transportation facility" and that their jobs both involved the wheelchair lift, resulting in their both being involved in the "same project" of providing transportation services to Brevard County school children. See Taylor, 790 So.2d at 1157. On the other hand, in Lopez, the court determined that the funeral home employee and the mechanic responsible for maintaining the work vehicles had different work locations and that their "specific purpose[s]" were different. See Lopez, 734 So.2d at 1097.
The resolution of the issue before us turns largely upon the question of whether the Legislature intended that the unrelated works exception be construed liberally or narrowly. Our task is not made easier by the Legislature's admonition that the worker's compensation law not be construed liberally in favor of the employee or the employer. Rather, the Legislature has cautioned that the system is based upon "a mutual renunciation of common-law rights and defenses by employers and employees alike." See § 440.015, Fla. Stat. (1999). The Legislature has also mandated that the ordinary rules of statutory construction be invoked. Id.
*5 Hence, we are bound to apply these principles in our analysis. We initially note that, in one sense, all employees of the same employer could always be considered engaged in related works since they are all charged to carry out the mission of the employer. At the same time, however, some distinction could always be drawn between the work of most employees so as to make their work unrelated. Because the unrelated works exception set out in section 440.11(1) represents an exception to the broad exclusive remedy provisions of the Florida's Workers' Compensation Law, we conclude that under the ordinary rules of statutory construction we must interpret it narrowly. See Samara Dev. Corp. v. Marlow, 556 So.2d 1097, 1100 (Fla.1990) ("[I]t is a well-recognized rule of statutory construction that exceptions or provisos should be narrowly and strictly construed.").
Since virtually all workplace injuries are caused by the actions of fellow workers, applying the unrelated works exception liberally would substantially handicap the underlying purpose of the compensation scheme to compensate employees for workplace injuries regardless of fault. Workers' compensation law and its unique relationship with the concept of liability has been summarized by one commentator in the following manner:
The right to compensation benefits depends on one simple test: Was there a work-connected injury? Negligence, and, for the most part, fault, are not in issue and cannot affect the result. Let the employer's conduct be flawless in its perfection, and let the employee's be abysmal in its clumsiness, rashness and ineptitude; if the accident arises out of and in the course of the employment, the employee receives an award. Reverse the positions, with a careless and stupid employer and a wholly innocent employee and the same award issues.
Thus, the test is not the relation of an individual's personal quality (fault) to an event, but the relationship of an event to an employment. The essence of applying the test is not a matter of assessing blame, but of marking out boundaries.
1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation, Desk Edition § 1.03, at 1-4 to 1-5 (2003). In the ordinary case, when we are faced with a situation where an employee is injured on the job there exists a natural inference that the injury is covered by the Legislature's workers' compensation scheme. That is the fundamental purpose of the law, to provide benefits for work place injuries in place of common law remedies. Correspondingly, we conclude that the exception to this scheme for unrelated works should be applied only when it can clearly be demonstrated that a fellow employee whose actions caused the injury was engaged in works unrelated to the duties of the injured employee. While we would like to be more precise in providing guidance to those initially charged with deciding disputes based upon this exception, we are limited by our lack of precise knowledge of the legislative intent behind the exception and the reality that we could not hope to contemplate the myriad of factual circumstances that may give rise to the issue.

THIS CASE
In the instant case, because we agree with the trial court's reasoning that Taylor and the school board mechanics had in common the "provision of transportation services to Brevard County school children," we cannot say that the work of the employees who maintained the school bus was unrelated to the work of the injured employee who was responsible for the *6 safety of the students in using the bus. Indeed, all of these employees shared a common goal of providing safe transportation to the students. We also agree with the observations of Justice Quince in her dissent in Lopez:
I disagree and would affirm the trial court's determination that the unrelated works exception to the exclusivity of workers' compensation benefits is not applicable to this situation. Lopez, Vilches, Brito and Kelly work for the same employer. All of them have some duties related to the van in question. Lopez drives the van to facilitate the moving of flowers from the chapel to the cemetery. The other employees use the van in their duties of maintaining and repairing the vehicles owned or leased by the employer. Under these circumstances, it cannot be said that the co-employees are engaged in unrelated works. See Abraham v. Dzafic, 666 So.2d 232 (Fla. 2d DCA 1995).
734 So.2d at 1098 (Quince, Associate Judge, dissenting). Further, we find that the Taylor holding comports with the overall legislative intent of the Florida Workers' Compensation Law, because the law was meant to systematically resolve nearly every workplace injury case on behalf of both the employee and the employer.
A contrary holding giving wide breadth to the rare exceptions to workers' compensation immunity would merely erode the purpose and function of the Workers' Compensation Law as established by the Legislature. We agree with the observations of the Fourth District in its recent decision in Fitzgerald v. South Broward Hospital District, 840 So.2d 460, 463 (Fla. 4th DCA 2003), that the unrelated works exception should be narrowly construed because "[a]n expansive construction would obliterate the legislative intent that the system operate at `a reasonable cost' to the employer" and that to decide otherwise would "erode the immunity provided under the worker's compensation law ... leading to a profusion of suits and a proliferation of costs."
Accordingly, we disapprove of the Second District's holding in Lopez, and approve the Fifth District's decision in Taylor.
It is so ordered.
WELLS, ANSTEAD, QUINCE, and CANTERO, JJ., concur.
LEWIS, J., concurs in result only with an opinion, in which PARIENTE, C.J., concurs.
LEWIS, J., concurring in result only.
In my view, it is the responsibility and obligation of this Court to interpret ambiguous statutory provisions and to provide the courts of this state guidance when the intent of the Legislature is not clearly discernible from the words of a statute or any legislative history. The majority here rejects the Second District's decision in Lopez, with which I disagree, but it then fails to adopt any parameters to provide assistance to the lower courts in the application of the unrelated works exception found in section 440.11(1) of the Florida Statutes. I concur only in the result of the majority opinion, as I believe Lopez was correctly decided and that we should formulate parameters as guidance for the lower courts to follow when presented with the unrelated works exception issue.
Today we must analyze section 440.11(1), which provides:
The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive *7 benefits under this chapter. Such fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death or such acts proximately cause such injury or death, nor shall such immunities be applicable to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment.
§ 440.11(1), Fla. Stat. (1999). Clearly, this unrelated works exception to the rule of general immunity applies only in the co-employees context, and application of the provision does not result in the loss of general immunity by an employer other than a public entity employer.
Here, the immunity with which we are concerned that barred Taylor from prosecuting a tort action against his co-employees as public employees working as school board transportation department mechanics flowed from sovereign immunity provisions for personal liability for torts pursuant to section 768.28(9)(a) of the Florida Statutes (1999). Section 768.28(9)(a) provides, in relevant part:
No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered ... unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.... The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state ... shall be by action against the governmental entity....
§ 768.28(9)(a), Fla. Stat. (1999). Therefore, Taylor was required to prosecute any available action against his employer, due to the immunity enjoyed by his co-employees under Florida's waiver of sovereign immunity provisions. This Court has held that the general immunity granted to an employer pursuant to the general provisions of Florida's workers' compensation statute does not override an employee's right to seek recovery for the negligence of a co-employee of his or her public or governmental employer. See Holmes County Sch. Bd. v. Duffell, 651 So.2d 1176, 1178 (Fla.1995) ("[W]e conclude that injured workers, both public and private, have a statutory right to accept workers' compensation benefits and at the same time pursue a civil action against a negligent co-employee who is assigned primarily to unrelated works."). The injured employee is granted the right to sue a co-employee by section 440.11(1), but is not permitted to prosecute an action against the negligent co-employee because of section 768.28(9)(a). Therefore, as this Court held in Holmes, the employee may seek recovery from the otherwise immune employer, because the employer is not being sued in its capacity as employer, but rather is being sued as a surrogate defendant based on the negligent acts of the public co-employee. See Holmes, 651 So.2d at 1179. Here, the school board did not lose its immunity to suit because of the application of the unrelated works exception. Instead, Taylor properly filed the action against the school board as a vicariously responsible defendant for the school board mechanics under the authority of Holmes.
The specific issue we review today is the scope of the application of the unrelated works exception for co-employee immunity to determine if a viable action existed upon which employer vicarious liability could be *8 predicated against the public entity. Employer liability is in issue only because of the public nature of the employer and the Florida law that has developed in the public employer context. See id. at 1178-79. A survey of the decisions of the district courts of appeal that have attempted to give this provision life demonstrate the challenges that our courts have experienced in attempting to apply this exception. In 1978, the Legislature amended section 440.11(1) and added the co-employee immunity provisions, including the "unrelated works" exception to such immunity. See ch. 78-300, § 2, Laws of Fla.; Vause v. Bay Med. Ctr., 687 So.2d 258, 266 (Fla. 1st DCA 1996) (Miner, J., concurring in part and dissenting in part). Prior to 1978, a negligent co-employee was considered a third party tortfeasor within the meaning of the workers' compensation act, for which no immunity was available, and the co-employee could be held liable for injuries sustained by a co-worker as a result of his or her negligence. See Frantz v. McBee Co., 77 So.2d 796, 800 (Fla.1955). In adding the limited co-employee immunity provisions along with exceptions, however, the Legislature did not define, nor did it provide guidance to define, the "unrelated works exception," see Lopez v. Vilches, 734 So.2d 1095, 1096 (Fla. 2d DCA 1999), and a review of the legislative history simply provides no insight into the Legislature's intended meaning for the exception. It is also interesting that we find no authority from foreign jurisdictions because the unrelated works exception appears to be unique to Florida's workers' compensation scheme. See Turner v. PCR, Inc., 732 So.2d 342, 344 (Fla. 1st DCA 1998), quashed, 754 So.2d 683 (Fla.2000). With only the pre-1978 interpretation and no definition, legislative history, or guidance from other jurisdictions from which to glean clear parameters for interpretation and application, our lower courts have been left without guidance and have been forced to proceed on an ad hoc basis to provide meaning to the immunity and its "unrelated works" exception concept. Although more than a dozen district court decisions have been reported which have considered this exception, no clearly defined method of application or uniformly accepted definition has emerged.
It must be noted that the majority reasons that the "task" of interpreting the unrelated works exception "is not made easier by the Legislature's admonition that the worker's compensation law not be construed liberally in favor of the employee or the employer. Rather, the Legislature has cautioned that the system is based upon `a mutual renunciation of common-law rights and defenses by employers and employees alike.'" Majority op. 4-5 (quoting § 440.015, Fla. Stat. (1999)). In my view, the majority is focusing and operating upon a faulty premise that the concept of co-employee immunity as with the general immunity provisions for employers, is based upon a "mutual renunciation of common law rights."
As noted above, co-employees did not have any immunity whatsoever from actions by co-workers until 1978. Prior to 1978, co-employees were entirely responsible for injuries caused by their negligence. The Legislature then opted to provide co-employees with immunity, and thus limited the situations in which co-employees could be held responsible for injuries they inflicted. Co-employee immunity is, however, unquestionably, not mutually beneficial to both the negligent co-employee and the injured co-employee. Under the workers' compensation scheme, an injured co-employee renounces his right to recovery from a co-employee, while a negligent, yet immune, co-employee gives up nothing. It is the immune employer who provides the benefits that the injured co-employee receives *9 in exchange for having no action against the co-employee. To suggest, as does the majority, that the co-employee immunity provision should be interpreted in the same manner as the general immunity provisions for employers is, therefore, flawed in my view. This Court's "task" of interpreting the unrelated works provision is not limited by the Legislature's admonitions with respect to an employer's immunity. Employers enjoyed general immunity long before co-employees were provided limited immunity, and this fundamental premise  that the workers' compensation scheme has never applied to co-employees  must not be ignored.
Unquestionably, the Legislature could have opted to broadly grant co-employees total immunity, but instead chose to include the "unrelated works" exception to co-employee immunity. Within the context of the statute, "works" is an ambiguous term, and it is clear that the lower courts have struggled to provide a precise definition for the word.[2] Certainly "works" could be defined to simply refer to the employees' work location. Such a definition would result in the exception being rarely applicable, as all co-employees in a common business location, regardless of actual operational duties, would be immune, a severe departure from the pre-1978 third-party tortfeasor status. Further, if the Legislature had intended such result, it surely would have used more conventional and typical language for "location." In my view, the Legislature's use of the word "works" is beyond the ordinary use of common understanding for location and has an operational overlay. Therefore, this Court is confronted with the task of attempting to ascertain the intended workable definition.
The Third District was the first to address the issue of the scope of the application of the unrelated works exception. In Johnson v. Comet Steel Erection, Inc., 435 So.2d 908 (Fla. 3d DCA 1983), the court held, without any expanded explanation, that a common laborer for a general contractor and a welder for a subcontractor, both of whom were employed on-site on the same construction project, were not engaged in unrelated works. See id. at 909. This opinion could be more properly characterized as determining what "unrelated works" is not, rather than what the concept was designed and intended to be. The result there was totally correct and consistent.
Seven years later, the Fourth District held that the issue of whether two employees were engaged in unrelated work "appears to be a question of fact not appropriate for summary judgment." Lake v. Ramsay, 566 So.2d 845, 848 (Fla. 4th DCA 1990). There, a maintenance and janitorial worker sought recovery from a construction supervisor. See id. at 846. The trial court entered summary judgment in favor of the supervisor, but the district court reversed, remanding the cause for further proceedings to determine whether the co-employees were engaged in related works. See id. at 848. See also Kite v. Escambia County, 830 So.2d 961, 962 (Fla. 1st DCA 2002) (holding summary judgment precluded because of genuine issues of fact regarding employee's entitlement to sue under the unrelated works exception). Both decisions were also correctly decided on the facts presented.
*10 Logically, depending on the factual context, the Fourth District has not consistently and uniformly adhered to its holding in Lake that the determination of whether co-employees are engaged in unrelated works is a question of fact not appropriate for summary judgment. In School Board of Broward County v. Victorin, 767 So.2d 551 (Fla. 4th DCA 2000), the district court reversed an order of the trial court denying the school board's motion for an immunity summary judgment, holding that "the instant case does not fall within the unrelated works exception to co-employee immunity." Id. at 552. The two employees there were both bus drivers for the school board; however, they worked from different bus depot locations. See id. at 554. The Fourth District held that regardless of whether a bright-line "physical location/business purpose" test or a case-by-case approach was used, the co-employees were engaged in related works because they "were both bus drivers for the School Board; both drove buses in Broward County on Interstate 95; and the purpose of both their jobs was to transport school children." Id. at 554. Therefore, a summary judgment in favor of the school board affording immunity was appropriate. See id. at 554.
The two tests referred to in Victorin, the bright-line "physical location/business purpose" test and the case-by-case "same project" test seem to have developed through a series of district court decisions in the mid- to late-1990s. In Abraham v. Dzafic, 666 So.2d 232 (Fla. 2d DCA 1995), the Second District concluded that two employees of a contractor, one a painter and the other a fluorescent lighting technician, were not assigned primarily to unrelated works, a decision with which I agree. See id. at 233. The district court determined that although the co-employees'"work skills may have been `unrelated,' their work was not." Id. Of importance to the district court was the fact that both employees worked on the same construction site. See id.
Vause v. Bay Medical Center, 687 So.2d 258 (Fla. 1st DCA 1996), provides an example of a district court relying upon the case-by-case "same project" test when analyzing whether two employees were engaged in unrelated works. Vause involved a nurse who was primarily assigned to the obstetric department of the hospital, but worked part-time in the hospital's hyperbaric department. See id. at 261. The nurse died shortly after assisting a patient in the hospital's hyperbaric chamber, and the personal representative of her estate filed an action against the hospital supervisor, the supervisor of the hyperbaric department, and the operator of the hyperbaric chamber. See id. at 260. The First District concluded that the nurse and the defendant co-employees were not engaged in unrelated works. See id. at 263. The court reasoned:
At the time of the injury to the deceased, she was engaged in activity related to her primary assignment, the provision of health care to a patient....
The operator of the hyperbaric chamber and Nurse Vause ... were both involved in the same project (rather than an unrelated project)  the care of one particular patient. The director of the chamber was also involved in the same project. Furthermore, the appellant fails to explain how the administrator of the entire hospital could be involved in works unrelated to a nurse who works in that same hospital. Each individual defendant was assigned to duties related to the purpose and function of decedent's job: The provision of health care to patients of the medical center.
*11 Id. Clearly, the First District, in Vause, defined "same project" broadly when it determined that the nurse, the hospital administrator, and the machine operator all had a related purpose. Arguably, under the First District's test, all hospital employees, regardless of their actual work assignment, would be engaged in the same project  the provision of health care to patients  and therefore the unrelated works exception would rarely, if ever, be applicable in any setting which could be interpreted as having a broad general purpose. Although correctly applied under the particular circumstances, the decision contains language which describes a project far too broadly.
The First District continued to rely upon the case-by-case "same project" test in Turner v. PCR, Inc., 732 So.2d 342 (Fla. 1st DCA 1998), quashed on other grounds, 754 So.2d 683 (Fla.2000). There, although both employees were technicians for the same corporation, one employee worked in the catalog department of the employer, while his co-employee worked in the research and development section. See id. at 345. The record reflected, however, that both employees worked together to prepare compounds, worked in a "team effort," and worked with the same equipment. See id. Consequently, the appellate court agreed with the reasoning of the trial judge that the two employees had "`different duties as related to the same project' at PCR, and hence were engaged in related, rather than unrelated, works." Id. (quoting Vause, 687 So.2d at 262).[3]
The Third District has also relied upon the "same project" test in applying the unrelated works exception. In Dade County School Board v. Laing, 731 So.2d 19 (Fla. 3d DCA 1999), the district court held that a teacher and a school custodian were not engaged in unrelated works. See id. at 20. There, the court noted, "The fact that employees have different duties does not necessarily mean they are involved in `unrelated works.' The pertinent factor is whether the co-employees are involved in different projects. Thus, the focus is upon the nature of the project involved, as opposed to the specific work skills of individual employees." Id. (citation omitted); see also Sanchez v. Dade County Sch. Bd., 784 So.2d 1172, 1172-73 (Fla. 3d DCA 2001) (adhering to Laing, holding teacher and security personnel were not engaged in unrelated works), review granted, 819 So.2d 139 (Fla.2002). As in Vause, the Third District has broadly defined and expansively applied the "same project" test by concluding that the teacher and the custodian "were both working on the same project, in the sense that they were co-employees providing education related services to students." Laing, 731 So.2d at 20. It is again difficult to imagine a situation in which application of the "same project" test, as so broadly interpreted and applied in Laing and Sanchez, would ever result in two employees of a school or other similar activity ever being engaged in unrelated works.
In Lopez v. Vilches, 734 So.2d 1095 (Fla. 2d DCA 1999), the Second District utilized the bright-line "physical location/business purpose" test. See id. at 1097. Lopez, the decision which presents apparent conflict *12 with the instant case, involved employees who all worked for entities that generally operated cemeteries and funeral homes. See id. at 1096. One of the duties of the injured employee required that he drive vehicles for the funeral home, while his co-employee defendants were responsible only for the maintenance of those vehicles. See id. The district court viewed the circumstances more narrowly and noted that the employees performed their duties in totally separate locations and "their specific purpose, general funeral home duties versus vehicle maintenance, appear distinct." Id. at 1097. Based upon those facts, the Second District held that the employees were engaged in unrelated works. See id.
Following the introduction of the more narrowly tailored second test in Lopez, the Fourth District has been presented with an unrelated works exception issue on at least three occasions. In all of those decisions, rather than applying one test as opposed to the other, the Fourth District has elected to examine the facts presented and somewhat extend the discussion of elements of both tests. See Fitzgerald v. S. Broward Hosp. Dist., 840 So.2d 460, 464 (Fla. 4th DCA 2003); Palm Beach County v. Kelly, 810 So.2d 560, 562 (Fla. 4th DCA 2002); Victorin, 767 So.2d at 554. In Kelly, the court held that the employees, one a maintenance equipment operator for the maintenance division at the local airport, the other an equipment mechanic for the County's Fleet Management Division, were engaged in unrelated works even though they worked from the same general location. See Kelly, 810 So.2d at 561-62. There, the court analyzed that the employees:
had different job duties and did not work cooperatively as a team but, rather, worked on two entirely different projects.... Although they both began and ended their day at County offices in the same general location, they worked on different projects at different locations and furthered different business purposes of the County.
Id. at 562.
In Fitzgerald, the most recent case to address the unrelated works exception, the Fourth District held that surgical nurses and hospital maintenance personnel were engaged in related works. See Fitzgerald, 840 So.2d at 463. There, the court reasoned:
Under the case-by-case approach, Fitzgerald's work and that of the maintenance personnel are related. Although they worked in different departments and had dissimilar duties that required separate skills, both performed services relating to the hospital's mission, which was the treatment of patients.
Applying the bright-line test, Fitzgerald's claim also fails, because she worked at the same physical location as the maintenance personnel and because she shared a unified business purpose with these fellow employees.
Id. at 464. As did the First District in Vause, the Fourth District relied upon a broad interpretation of the tests and expansively applied the immunity. As noted before, it appears that this broad interpretation would render all hospital and similar employees engaged in the same "mission," and the unrelated works exception would, therefore, never be applicable. This is an approach with which I do not agree.
Finally, in 2001, the Fifth District analyzed the unrelated works exception in the instant case, Taylor v. School Board of Brevard County, 790 So.2d 1156 (Fla. 5th DCA 2001). Although the Fifth District did not specify a particular test to be utilized for analytical purposes, the court relied upon factors such as physical location *13  the co-employees were assigned to work from the same transportation facility  and that both were involved in the same project  the provision of transportation services to school children. See id. at 1157. Based upon these factors, the court concluded that the co-employees, a bus attendant and a bus mechanic, were engaged in related works. See id. at 1158.[4]
An analysis of the district court decisions that have addressed the application of the unrelated works exception demonstrates the difficulty we have experienced in attempting to apply this provision. However, difficulty in application should not result in a failure by this Court to provide the lower courts with analytical parameters that should be utilized in considering this exception. The Legislature included the unrelated works doctrine in the workers' compensation statute, and despite the Legislature's failure to define "unrelated works," it must be given some uniform meaning. While perhaps the best solution would be for the Legislature itself to amend the statute to define "unrelated works" or provide more specific wording, at present the task of interpretation necessarily falls upon this Court. Unquestionably, we must provide the lower courts with a framework to follow to support common and uniform application of this concept of "unrelated works."
I cannot agree with the majority's view that "[w]hile we would like to be more precise in providing guidance to those initially charged with deciding disputes based upon this exception, we are limited by our lack of precise knowledge of the legislative intent behind the exception and the reality that we could not hope to contemplate the myriad of factual circumstances that may give rise to the issue." Majority op. at 5. A lack of knowledge of legislative intent and difficulty in reaching the myriad of factual circumstances should not cause the judicial system and this Court to abdicate its responsibility when disputes are presented. "A court's function is to interpret statutes as they are written and give effect to each word in the statute." Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 324 (Fla.2001). If the majority's view is followed, this Court would never interpret an ambiguous statute, and would instead always raise the white flag and retreat without affording analysis and guidance to the lower courts. I cannot subscribe to the view that difficulty in analysis should cause the judiciary to surrender its responsibility to interpret and apply legislative provisions. If that were the law, then any ambiguous statute would result in non-interpretation. It is the duty of this Court to interpret and apply legislative provisions, and if the Legislature subsequently disagrees with our interpretation, so be it. However, we must not abdicate our responsibility to the citizens of this state. This Court must interpret the unrelated works provision so that the lower courts will be able to uniformly apply *14 this statutory exception to co-employee immunity for the citizens of Florida.
To date, very few courts have held the unrelated works exception to be applicable. Instead, the majority of courts have determined that the co-employees involved were engaged in related works based upon multiple frameworks of analysis. The decisions of the district courts do demonstrate, however, that neither test currently employed by the district courts singularly is entirely sufficient when presented with the issue. Those decisions do provide some insight into what factors are best examined when addressing the unrelated works exception. Clearly, physical business location is an important and essential element. When co-employees do not perform their duties in a common business location, it is more likely, although maybe not an absolute guarantee, that they will be engaged in unrelated works. However, because there will be instances in which co-employees working at the same business location may be engaged in unrelated works or employees working at different locations may be working a joint project, physical location alone is not a sufficiently reliable test. Therefore, the "same project" or business purpose analysis test should also be examined, but must not be applied so broadly and generally as to cause the unrelated works exception to have no field of operation. At the same time, the "same project" business purpose framework should not be applied so narrowly as to result in the unrelated works exception totally subsuming the entire underlying co-employee immunity concept in the workers' compensation statutory scheme.
Thus, in my view, the unrelated works exception should be defined with reference to the consolidated physical business location/same project-business purpose analytical framework. I conclude that Lopez and the present case demand different results. Here, it is undisputed that the employees worked from the same physical business location and both were directly involved with the same and common business purpose of maintaining and operating motor vehicles for the employer. In Lopez, the co-employees did not work from the same physical business location nor did a common business purpose surface.
First, if co-employees are not assigned to work at the same physical business location, and the work being performed at the injury location is not part of a team or the same joint project, I would conclude that the unrelated works concept should apply as a matter of law. Second, even if the employees are not assigned to work at the same physical business location but are directed to perform tasks at the injury location and the work being performed is part of a team or specific business project with co-employees, the exception would not apply with regard to the particular team or specific project co-employees. Third, if the co-employees are assigned to work at the same physical business location and the work being performed at the injury location is part of a team or directed to the same joint business project, the unrelated works exception would not apply. Finally, even if the co-employees are assigned to work at the same physical business location where the injury occurs but the work being performed is not part of a team or directed to the same joint business project, I would conclude that the unrelated works exception would be applicable as a matter of law. Within these four categories factual issues may or may not exist depending upon the broad variety of workplace and injury circumstances. Further, the concept of team or specific business project should not be so broadly defined as to render the exception meaningless nor defined so narrowly as to permit the exception to totally eviscerate the fundamental *15 rule of co-employee immunity. For example, to include every employee who may perform some work at an educational, hospital, or other similar facility as being within the same team or specific business project concept would, in my view, be fundamentally flawed. In a generalized manner, everything within the universe may be said to be "related" in the broadest of philosophical terms, which would lead to the absurd result that nothing could ever be "unrelated" to the specific business project. Thus, although every activity or item of work performed at or near such a facility could in the broadest of terms be generally and theoretically viewed as the general purpose of the business conducted at such location if such analysis were approved, the simple fact of common employment itself could simply swallow and erase the legislatively created exception, a result that would frustrate legislative will, intent, and power.
Within the final category, namely when the co-employees are assigned to work at the same physical location where the injury occurs but the work being performed there is not part of a team or directed to the same joint business purpose, the application of the unrelated works exception is dependent upon a number of factors, including the size of the facility, the diversity of the acts performed there, and the relationship of the diverse activities being performed at the location. These factors must be considered when a court is trying to determine when work is either related or unrelated. A large, single-owner facility with voluminous employees, such as a university, that consists of diverse activities and diverse purposes warrants different consideration than a small, single-structure location with a dominant unitary purpose and only minor variations in duties, such as custodial staff to support the singular activity.
The facts presented in Vause v. Bay Medical Center offer a useful example here. In Vause, a nurse died after assisting a patient in the hyperbaric chamber at the hospital. See Vause, 687 So.2d at 260. Subsequently, the personal representative of her estate filed a wrongful death action against the hospital, and also named the co-director of the hyperbaric center, the operator of the hyperbaric chamber, and the administrator of the hospital as defendants. See id. The First District held that all of the co-employees named in the complaint were assigned to works related to the decedent  the provision of health care to patients  and, therefore, the unrelated works exception was not applicable. See id. at 263. A hospital is a large facility with numerous employees and diverse activities. However, under the First District's interpretation, the unrelated works exception would never apply, as all employees would be considered related. Certainly, a nurse working in a hyperbaric chamber does not work on the "same team" as the hospital administrator, who unquestionably has many duties and responsibilities that a nurse does not. Therefore, applying the factors noted above, in a large hospital with diverse activities, while a nurse working in the hyperbaric chamber does engage in works related to that of the operator and director of the hyperbaric chamber, the administrator of the hospital should not likewise enjoy immunity from suit because his work is unrelated to that of the nurse. Similarly, a nurse and maintenance personnel who work at the same physical location  a large hospital with diverse employees  yet clearly not on the same project, should not be considered to perform related works. See Fitzgerald, 840 So.2d at 464. The employees perform diverse activities for the same employer, and their work, which has the commonality of benefitting the employer hospital, is unrelated.
*16 The concept of "unrelated works" envisions application of both locational and operational analytical elements. Application of the foregoing analytical framework demonstrates that in Lopez the co-employees were not assigned to the same physical business location and were spatially or locationally separated. Secondly, the co-employees were not within the same team or special business project. One was engaged in general funeral home activities and duties, while the other was exclusively involved in general motor vehicle maintenance from the operational perspective. Application of the "unrelated works" exception by the Second District in Lopez was clearly correct. Although both employees, from a theoretical perspective, may have been advancing and benefitting the general funeral home business of the employer, they were not engaged from the same location nor as the same team or specific business project. Thus, the co-employees in Lopez satisfied neither the locational nor the operational elements to eliminate the "unrelated works" exception.
The facts of the instant case produce a contrary result upon application of the same analytical framework. Here, the co-employees were assigned to and worked from the same physical business location. The locational perspective and element clearly placed the co-employees together at the same location. In a similar manner, the work of the claimant employee was directed to the operation of the motor vehicle and its specialized lift equipment, while the activity of the co-employee defendant was directed to the mechanical responsibility and work for the same motor vehicle and lift equipment. From the operational perspective, the co-employees were joined for a common project and business purpose-proper operation of the specialized lift equipment. Had an instructor or administrator from the educational facility been injured, the analysis would produce a different result.
In conclusion, the majority's philosophical discussion of the unrelated works exception fails, in my view, to provide proper assistance to the lower courts. While the majority holds that the exception should be construed narrowly, and writes: "[W]e conclude that the exception to this scheme for unrelated works should be applied only when it can clearly be demonstrated that a fellow employee whose actions caused the injury was engaged in works unrelated to the duties of the injured employee," majority op. at 5, it does not define or explain what constitutes "works unrelated to the duties of the injured employee." The concept of "unrelated works" cannot be defined by simple reference back to the word "unrelated" or reversing the phrase "unrelated works" to "works unrelated." Only by providing the lower courts with parameters to be followed, establishing more precisely what is meant by "unrelated works," will this Court have effectively assisted the lower courts. The majority's failure to establish parameters for the application of the unrelated works exception leaves the lower courts pondering in search of the proper formula for administration of this exception to the workers' compensation statutory scheme without any uniformity whatsoever. Therefore, I concur only in the result reached by the majority.
PARIENTE, C.J., concurs.
NOTES
[1] Section 440.11, Florida Statutes, entitled "Exclusiveness of liability," provides in pertinent part:

The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or the legal representative thereof in case death results from the injury, may elect to claim compensation under this chapter or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by negligence of a fellow employee, that the employee assumed the risk of the employment, or that the injury was due to the comparative negligence of the employee. The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter. Such fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death or such acts proximately cause such injury or death, nor shall such immunities be applicable to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment. The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, corporate officer or director, supervisor, or other person who in the course and scope of his or her duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of a law, whether or not a violation was charged, for which the maximum penalty which may be imposed does not exceed 60 days' imprisonment as set forth in s. 775.082.
§ 440.11(1), Fla. Stat. (1999).
[2] A simple cursory glance at the words "work" or "works" in the dictionary reveals over thirty-five different and divergent definitions for the term. See Merriam-Webster's Collegiate Dictionary 1363 (10th ed.1998). These definitions include those that relate to both location of activity and to operational functions, demonstrating the varying meanings that can be assigned to the words.
[3] Notably, Turner involved an employee who filed an action against his private employer, rather than a co-employee. The employee argued that the unrelated works exception enabled him to sue his employer for negligence without regard to workers' compensation immunity. See Turner, 732 So.2d at 344. The First District did not discuss that the unrelated works exception to workers' compensation immunity applies strictly to co-employees and does not impact a private employer's immunity established pursuant to the general provisions of section 440.11(1).
[4] There are two additional decisions which concern the application of the unrelated works exception, but the relevant issue in those cases was not whether the co-employees were engaged in unrelated works. In Holmes County School Board v. Duffell, 651 So.2d 1176 (Fla.1995), this Court held that the employer's immunity, granted pursuant to section 440.11(1), did not preclude an action by an employee against his public employer pursuant to section 768.28(9)(a) of the Florida Statutes. See id. at 1179. There, the trial court had made a determination that the co-employees, one a school bus driver, the other a custodian, were assigned to unrelated works. See id. at 1177 n. 1. That determination was not challenged on appeal. See id. In State Department of Corrections v. Koch, 582 So.2d 5 (Fla. 1st DCA 1991), neither party disputed that the co-employees, one an employee of the Department of Transportation and the other an employee of the Department of Corrections, were assigned primarily to unrelated works. See id. at 7.