*1068
 
 HAWKES J.
 

 In this workers’ compensation case, the employer carrier (E/C) appeals a non-final order adjudicating compensability in Claimant’s favor. Claimant was injured when he attempted to retrieve personal property from a car which his lender was repossessing from his employer’s parking lot. There is no dispute that the accident resulting in the injuries occurred in the course and scope of Claimant’s employment. The question we address focuses only on the first part of the coverage formula, “arising out of work performed,” as set forth in section 440.09, Florida Statutes (2008).
 

 The E/C argues the phrase “arising out of work performed” requires that the risks that caused Claimant’s accident and injuries must be work-related. The risk cannot be personal to Claimant or “imported” to the workplace by the Claimant. We agree. Because, at the time of the accident, Claimant was on a purely personal mission having no relationship to work, the accident and injuries did not arise out of his employment. We therefore reverse.
 

 FACTS
 

 Claimant, a sales associate, was sitting at his cubicle working, when his supervisor informed him that a tow truck was near his vehicle in the company parking lot. Claimant immediately exited the building and had a conversation with the tow truck driver who informed him he had orders to take possession of the car and suggested he call his bank or finance company.
 

 Claimant went back inside the office and phoned the bank. A bank representative informed him that his car was being repossessed (Claimant was two months behind on his car payments) and he needed to get his personal items out of the vehicle. Claimant went back to his vehicle to retrieve his personal belongings, (incidental bills and school textbooks) not work-related items. While Claimant was collecting his belongings with his body partially in his car and his feet on the surface of the parking lot, the tow truck driver (who had hooked Claimant’s car up to the truck) drove off, dragging, and eventually running over Claimant, causing injuries.
 

 The entire episode described above occurred within fifteen to twenty minutes. Claimant, who is permitted to take two paid fifteen-minute breaks per day, had not taken his breaks that day and was paid for this time. The parking lot, where the accident occurred, is used exclusively by the Employer and monitored by security guards. The Claimant was not disciplined or sanctioned in any way by his employer for going to the parking lot in response to the repossession of his car.
 

 The parties bifurcated the issue of com-pensability from the issues regarding the precise amount of benefits due, and attended a merit hearing on only the issue of compensability. Claimant and his supervisor testified live (consistent with the account of the events as depicted above), and the parties, who had no ostensible disagreement over the facts, represented that the issue was primarily a legal matter.
 

 CLAIMANT’S ARGUMENTS
 

 Claimant maintains that because the injury occurred on the Employer’s premises, while he was on a paid break, doing an activity implicitly permitted by the Employer, the “arising out of’ requirement of section 440.09, Florida Statutes (2008) was satisfied. Specifically, he claims he had not substantially deviated from his employment when he was injured, and makes the following four points in support of his com-pensability argument.
 

 • First, his injury is compensable under the premises rule because he was injured on the employer’s premises while preparing to perform work.
 

 
 *1069
 
 • Second, his injury is compensable because it occurred during a paid work break.
 

 • Third, his injury is compensable because he was injured while ministering to his personal comfort; yet, he had not deviated from the course and scope of his employment (rendering Employer consent irrelevant). Additionally, even if there was a deviation, it was insubstantial—which would not remove him from the course and seope of his employment.
 

 • Fourth, his injury is compensable because retrieval of his schoolbooks was an emergency and injuries sustained as a result of an emergency designed to save property are compensable under section 440.092(3), Florida Statutes (2008).
 

 STANDARD OF REVIEW
 

 We accept the facts as found by the JCC and stipulated to by the parties. To the extent this issue involves the JCC’s interpretation and application of a statute, it is a question of law and subject to a de novo standard of review.
 

 “Arising out of’ pertains to occupational causation. § 440.02(36), Fla. Stat. (2008). An accidental injury or death
 
 arises out of employment
 
 if work performed within the course and scope of employment is the major contributing cause of the injury or death.
 
 See Id,
 
 A condition is considered to “arise out of employment” when the employment necessarily exposes a claimant to conditions which substantially contribute to the risk of injury and to which the claimant would not normally be exposed during his life outside employment.
 
 Acker v. Charles R. Burklew Constr.,
 
 654 So.2d 1211 (Fla. 1st DCA 1995).
 

 Work connection determines coverage under chapter 440, not fault. Compensation “shall be payable irrespective of fault as a cause for the injury.” § 440.10(2), Fla. Stat. (2008). The Supreme Court has summarized workers’ compensation law and its unique relationship with the concept of liability:
 

 The right to compensation benefits depends on one simple test: Was there a work-connected injury? Negligence, and, for the most part, fault, are not in issue and cannot affect the result. Let the employer’s conduct be flawless in its perfection, and let the employee’s be abysmal in its clumsiness, rashness and ineptitude; if the accident arises out of and in the course of the employment, the employee receives an award. Reverse the positions, with a careless and stupid employer and a wholly innocent employee and the same award issues.
 

 Thus, the test is not the relation of an individual’s personal quality (fault) to an event, but the relationship of an event to an employment. The essence of applying the test is not a matter of assessing blame, but of marking out boundaries.
 

 Taylor v. Sch. Bd. of Brevard County,
 
 888 So.2d 1, 5 (Fla.2004) (citing Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation, Desk Edition § 1.03, at 1^1 to 1-5 (2003)). “Arising out of’ is part of the work connection test.
 

 For an injury to “arise out of work performed,” the injury must (1) be causally connected to the claimant’s employment; (2) have had its origin in some risk incident to or connected with the employment; or (3) flow from the employment as a natural consequence.
 
 See Fid. & Cas. Co. of N.Y. v. Moore,
 
 143 Fla. 103, 196 So. 495, 496 (1940).
 

 In workers’ compensation, all risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and “neutral” risks—that is, risks having no particular
 
 *1070
 
 employment or personal character.
 
 Griffith v. Budget Rent-A-Car Systems, Inc.,
 
 692 So.2d 294, 296 (Fla. 3d DCA 1997) (quoting A. Larson,
 
 The Law of Workmen’s Compensation
 
 § 7.00 (1984)). Harms from risks peculiar to employment are universally compensable.
 
 Id.
 
 Harm caused by personal risks are universally noncompensable.
 
 Id.
 
 It is within the third category (neutral risks) that most controversy in modern compensation law occurs.
 
 Id.
 

 COURSE AND SCOPE INSUFFICIENT
 

 The coverage formula found in section 440.09(1) reads: “The employer must pay compensation or furnish benefits required by this chapter if the employee suffers an accidental compensable injury or death
 
 arising out of
 
 work performed in the course and the scope of employment.” (emphasis added). The “arising out of’ requirement comes first and controls or modifies all that comes after it in the sentence. The “course and scope of employment” phrase defines the “work performed” that the injury must “arise out of.” Chapter 440 does not cover an accident resulting in injury, which does not arise out of, but does occur in the course and scope of employment.
 

 Claimant’s first two arguments are based on the fact that he was in the course and scope of his employment when injured. These arguments fall short. Under the “premises rule” cases, the claimants are engaged in some activity related to work, such as getting tools, entering the work place or picking up their pay check. In the paid break cases, the question is frequently resolved in favor of the claimant because there has been no substantial deviation from work. The paid break is normally of short duration and related to the concept of the personal comfort rule and is, in essence, a continuation of the work. Injuries, even those undoubtedly suffered in the course and scope of employment (such as on the premises or on paid breaks), are
 
 not compensable
 
 if the risk giving rise to injury is distinctly (or wholly) personal in nature or the injury results from a risk that the employee has
 
 imported
 
 into the workplace.
 
 See Leon County Sch. Bd. v. Grimes,
 
 548 So.2d 205 (Fla. 1989) (concluding employee’s injuries resulting from fall occurring while employee was performing work in the course and scope of employment were not compensa-ble because fall occurred as a result of personal risk, and “employment conditions did not contribute to her injury”);
 
 see also Carnegie v. Pan Am. Linen,
 
 476 So.2d 311 (Fla. 1st DCA 1985) (“In circumstances where the workplace is merely the fortuitous site of a personal assault which is purely private in origin, and the employment does not otherwise impact the altercation, compensation benefits are properly denied even if the claimant is not the aggressor since the resulting injuries would not arise out of the employment.”).
 

 In
 
 Grimes,
 
 the Supreme Court declined to expand coverage of chapter 440 to injuries sustained in the course and scope of employment, but caused by risks personal to employee, where employment did not contribute to risk. 548 So.2d at 206. Although the Court did not provide an explicit method of analysis for difficult com-pensability issues, it did provide guidance:
 

 The purpose of the act is to shoulder on industry the
 
 expense incident to the hazards of industry;
 
 to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense.
 
 Our act affords no relief for disease or physical ailment not produced by industry. [Protectu Awning Shutter Co. v. Cline,
 
 154 Fla. 30, 16 So.2d 342, 343 (1944) ](emphasis added). Further, we have explained that chapter 440 “was not designed to
 
 *1071
 
 take the place of general health and accident insurance.”
 
 General Properties Co. v. Greening,
 
 154 Fla. 814, 820, 18 So.2d 908, 911 (1944).
 

 Id.
 

 In
 
 Carnegie,
 
 the claimant was injured during an at-work altercation which involved a female co-worker with whom claimant had been romantically involved. 476 So.2d 311. Although the relationship had apparently ceased and the two had not spoken for approximately one month, upon arriving at work on the day of the altercation claimant suffered a knife wound inflicted by the spurned lover regarding the termination of the relationship.
 
 Id.
 
 The JCC denied compensation for the knife wound, holding there must be some contributing factor from the employment before coverage could be found.
 
 Id.
 
 at 312.
 
 [1]
 
 Although the JCC was correct on the law, we remanded for the JCC to resolve specific factual issues.
 
 Id.
 

 The “arising out of’ inquiry or workplace risk question is frequently discussed in cases involving either horseplay at work or altercations at work. Even when finding coverage, the inquiry is always made to determine whether such incidents meet the “arising out of’ requirement. Frequently, the court has found these situations are a normal fixture of the workplace, and therefore result from a work-related (or work-produced) risk.
 
 See Jean Fluet, Inc. v. Harrison,
 
 652 So.2d 1209, 1210 (Fla. 1st DCA 1995) (explaining that routine or minor horseplay is compensable because such aberrations are sufficently common in workplace);
 
 Tampa Maid Seafood Products v. Porter,
 
 415 So.2d 883 (Fla. 1st DCA 1982) (concluding injuries suffered by non-aggressor in workplace assault were com-pensable where work facilitated the assault and contributed to altercation).
 

 In
 
 Porter,
 
 the court found coverage when the case involved workplace gossip and where the assault was made using work place tools.
 
 Id.
 
 at 885. The court suggested that injuries resulting from normal work squabbles (about work issues) are compensable because the risk of such conflict is endemic to the workplace (and the human condition), and caused by the compelled proximity of flawed beings in the work environment:
 

 Work places men under strain and fatigue from human and mechanical impacts creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities [created] ... outside the job are magnified to the boiling point by its compelled contacts.
 

 Id.
 
 at 885 n. 3 (quoting
 
 Hartford Accident & Indemnity Co. v. Cardillo,
 
 112 F.2d 11 (C.A.D.C.1940).
 

 If industry does not contribute to the risk of the accident resulting in injury, the workers’ compensation law does not require industry to contribute to the cost of the injury. Accordingly, regardless of whether Claimant was injured on the premises during work hours, a necessary inquiry remains whether Claimant’s accident arose out of a risk incidental to work — whether a work risk somehow caused or contributed to the injury. Mere presence at the workplace is never enough, standing alone, to meet the “arising out of’ prong of the coverage formula. Because the accident did not
 
 “arise out of work performed
 
 in the course and scope of employment,” it is not compensable.
 

 PERSONAL COMFORT
 

 The Claimant also argues that the “personal comfort” rule allows a finding of compensability. Claimant mis
 
 *1072
 
 construes the rule. The courts have consistently awarded benefits to accidental injuries suffered while an employee is engaging in personal comfort activities, based on the rationale that such activities provide a benefit to the employer and are reasonably incidental to the performance of work activities.
 
 See Bayfront Med. Ctr. v. Harding,
 
 653 So.2d 1140 (Fla. 1st DCA 1995) (providing “a worker’s attendance to personal comfort during a refreshment break is conducive to the facilitation of the employment”). The personal comfort rule only applies when there is either a work-related, or neutral risk.
 
 See Southern Bell Tel. & Tel. Co. v. McCook,
 
 355 So.2d 1166 (Fla.1977) (holding that a claimant attending to a personal comfort (in this case, a restroom break) is not covered by the act if the workplace provided none of the risk or did not otherwise contribute to the injury);
 
 see also Rodriguez v. Tri-State Carriers, Inc.,
 
 792 So.2d 1253 (Fla. 1st DCA 2001) (finding, as a general rule, that an injury does not arise out of employment if the employee was injured while engaged in a purely personal errand);
 
 and see Galaida v. AutoZone, Inc.,
 
 882 So.2d 1111 (Fla. 1st DCA 2004) (holding claimant’s injury by his own firearm while on a personal comfort smoking break was not compensable).
 

 Every “personal comfort” case accepted as compensable by the court has met three prongs:
 

 (1) The activity has been a traditional or routine part of the work place experience (incidental to work);
 

 (2) The employee’s participation in activity of this type has been held to benefit the employer by producing a refreshed employee; and
 

 (3) The injury results from either a work created risk or a neutral risk.
 

 A failure to meet these three prongs prevents an activity from qualifying under the personal comfort doctrine.
 

 Claimant’s injury fails, at a minimum, to meet the first and third prongs, and arguably fails to meet the second. Certainly, Claimant was not ministering to a traditional (or objective) act of personal comfort such as eating a snack, smoking, or taking a restroom break (an activity that the law deems as incidental to work). Claimant’s injury resulted from his hanging out of a vehicle window while his lender exercised its repossession rights. Recovering property from a repossessed vehicle is not the type of activity normally associated with creating a “refreshed” employee. Claimant cannot just declare any activity as one pursued for “personal comfort.” Such a finding would render the “arising out of’ prong meaningless. Claimant was carrying out a mission that was purely personal and not related to work, incidentally or otherwise.
 

 EMERGENCY
 

 As an alternative basis to affirm the JCC, Claimant argues the tipsy coachman rule, asking this Court to construe his actions as an emergency undertaking covered under section 440.092(3).
 

 Injuries are compensable under the workers’ compensation law if the employment places employees in a position that requires them, by “ordinary standards of humanity,” to respond to emergencies.
 
 Deutsch v. Heritage Auto. Enter.,
 
 939 So.2d 259 (Fla. 1st DCA 2006). The law provides coverage when an emergency triggers an action dictated “by ordinary standards of humanity” designed to save life or property. An emergency is something more than a whim or a mere desire by the employee to take some action. Webster’s dictionary
 
 [2]
 
 defines “Emergen
 
 *1073
 
 cy” as an
 
 unforeseen
 
 combination of circumstances or the resulting state that calls for immediate action, or an
 
 urgent need
 
 for assistance. Thus, the law requires a subjective response to a situation that would be objectively recognized as an emergency.
 

 In
 
 Deutsch
 
 the claimant was injured when he acted to recover property that was being stolen from the employer’s premises. 939 So.2d at 260. The Claimant was in a position, due to work, to observe the attempted theft of the property. The “ordinary standards of humanity” may cause an individual to attempt to recover property they observe being stolen. Therefore, the observed theft in
 
 Deutsch
 
 would qualify as an emergency and the injury that resulted from the recovery effort, even if the property belonged to the claimant, would be included within the section’s scope.
 

 The significance of the
 
 Deutsch
 
 holding was that the ownership of the property was not the determinative factor in deciding when section 440.092(3) applies.
 
 Deutsch
 
 recognizes the principle that when work places an individual in a position to observe the endangerment of property or people, such as an attempted theft or an assault, the “ordinary standards of humanity” may motivate the individual to take action. If injury results from the action, then the statute deems the injury would “arise from work performed” because of section 440.092(3).
 

 Therefore, before any act can be found to be “in response to an emergency,” the emergency must arise in a situation that would be objectively recognized by others as an emergency requiring similar action to be undertaken as undertaken by the Claimant. The law does not permit the Claimant, or the Claimant’s circumstances, to bring acts within the scope of the section by declaring a personal emergency. Here, the rash act of attempting to recover personal schoolbooks from his vehicle while it was being repossessed, while potentially important to the Claimant— perhaps even a personal emergency— would not create an objectively recognized exigency. The normal “standards of humanity” would not dictate the action Claimant took.
 

 Not only is there no evidence of an objective emergency, there is no evidence of a subjective belief by Claimant that the recovery effort was in response to an emergency. Claimant testified that his recovery effort was not related to work or an emergency, but only that he attempted to retrieve the books because he was instructed to do so by his lender. Claimant produced no evidence establishing that work created or caused his exposure to an “emergency” circumstance requiring his response. Because the evidence fails to establish that, the Claimant was responding, consistent with the “standards of humanity,” to an emergency, the tipsy coachman rule is not applicable.
 

 CONCLUSION
 

 Because Claimant was on a purely personal mission having no relationship to work, he is unable to demonstrate he suffered an accidental compensable injury arising out of a risk of his employment. Accordingly, we REVERSE the finding of compensability.
 

 THOMAS and RAY, JJ., concur.
 

 [1]
 

 . We reversed this case and remanded for the JCC to resolve material conflicts in evidence, including whether the work environment directly impacted the altercation and/or industry contributed to the risk that resulted in the injuries.
 

 [2]
 

 . Merriam-Webster's Collegiate Dictionary, Eleventh Edition (2003).