BERGOSH, GARY L., Associate Judge.
In this workers’ compensation case, the surviving dependents of Melvin Pivaral-Ramirez, an employee of King’s Food and Meat Bazaar (King’s), challenge an order of the Judge of Compensation Claims (JCC) that denies the compensability of his accident, injuries, and death. We conclude the JCC erred in denying compensability; we therefore reverse the appealed order and remand the case for the award of benefits available under the Florida Workers’ Compensation Law.
Facts
Mr. Pivaral-Ramirez was the front-end manager for King’s. On the evening of June 5, 2011, he began to gather shopping carts from King’s parking lot. As he worked in the parking lot, a car hit him *1149 and sped away. Suffering from, inter alia, severe brain injuries leaving him in a vegetative state, he passed away in the hospital a few weeks later.
The driver of the car, Christopher Po-lanco, was apprehended that same night, and claimed his actions were in reaction to the decedent sexually harassing his girlfriend, a cashier at King’s.[1] The criminal assailant confessed that he planned the attack for at least two to three weeks and knew Mr. Pivaral-Ramirez collected shopping carts from the store’s parking lot each night. On the night of the murder, the assailant confessed, he borrowed the car from a friend, brought food to his girlfriend at the store, and then waited in the parking lot as it began to get dark. When Mr. Pivaral-Ramirez emerged from the store to collect the day’s shopping carts, the assailant confessed, he became enraged, turned on the car’s high beam headlights, and sped towards Mr. Pivaral-Ramirez, striking and ultimately killing him.
Analysis
The Workers’ Compensation Law defines “injury” as “personal injury or death arising out of and in the course of employment.” § 440.02(19), Fla. Stat. (2010). The Law also requires that an injury, to be compensable, “aris[e] out of work performed in the course and scope of employment.” § 440.09(1), Fla. Stat. (2010). Here, the JCC concluded that, although the decedent was in the course and scope of his employment at the time of his injury, the injury did not arise out of his employment because there was no evidence that “anything in the decedent’s employment was related to him being put at risk of being murdered,” “[t]he vehicle used in the assault was not an implement of the employment,” “[tjhere is no evidence of a close proximity between the decedent and his assailant,” and the location of the attack was merely “convenient” or “fortuitous” because, given the assailant’s belief that his girlfriend was being sexually harassed by the decedent, “chances were the assault was inevitable, without regard to the employment.” The JCC further concluded the “assailant could just as easily [have] hit [the decedent] with the vehicle or attacked him in some other way elsewhere.” While some of these findings are proper as allowed by case law describing the factors a JCC may consider in determining the work-relatedness of an intentional act, the last conclusion is quite speculative.[2] See Sentry Ins. Co. v. Hamlin, 69 So.3d 1065, 1071 (Fla. 1st DCA 2011) (work-related risk); Carnegie v. Pan Am. Linen, 476 So.2d 311, 312 (Fla. 1st DCA 1985) (implement of the employment); Tampa Maid Seafood Prods, v. Porter, 415 So.2d 883, 885 (Fla. 1st DCA 1982) (close proximity); San Marco Co. v. Langford, 391 So.2d 326, 327 (Fla. 1st DCA 1980) (fortuitous location). Of course, not all factors need to be present in all cases of compensability.
We accept, as supported by the record, the facts as found by the JCC. Therefore, the JCC’s interpretation and application of the statute is a question of law subject to review de novo. As the parties agree that the decedent was “in the scope of his employment,” the seemingly simple issue is whether the decedent’s in *1150 jury can be found to be “arising out of his employment. The inquiry is not as to fault. Rather, it is merely “of marking out boundaries.” Hamlin, 69 So.3d at 1069 (quoting Taylor v. Sch. Bd. of Brevard Cnty., 888 So.2d 1, 5 (Fla.2004) (quoting 1 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation, Desk Edition § 1.03, at 1-4 to 1-5 (2003))). In general terms, when a work-related risk brings about injury, the injury is compensable vis-a-vis those that are brought about by risks personal in nature, which are not. See Hamlin, 69 So.3d at 1070.
Some jobs are more prone to workplace assaults than are others. Usually this is so because of one, or both, of the following factors: 1) the nature of the job, e.g., dangerous duties; and 2) the nature of the environment of the job, e.g., dangerous locations.[3] In this case, it was the environment; the decedent was collecting shopping carts at night. Obviously, an employee being hit by a car in the customer parking lot while collecting shopping carts at night is a risk “incident to the hazards of industry.”[4] See Leon Cnty. Sch. Bd. v. Grimes, 548 So.2d 205 (Fla.1989) (quoting Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342, 343 (1944)). Additionally, while the decedent had no apprehension of personal animosity of a coworker’s jealous boyfriend, there is no question the genesis for the “dispute” giving rise to the fatal injuries here was in the workplace. The instant case is analogous to Tampa Maid, wherein a love triangle among three co-workers resulted in claimant being assaulted with a shrimp knife. 415 So.2d at 885. Specifically, both there and here, it was the interaction of people connected only by the workplace that prompted the accident, and therefore, we reach the same conclusion of compensa-bility.
Conclusion
As the decedent was both in course and scope of his employment and his injury did indeed arise from his employment, his injuries and death are legally compensable. Accordingly, we REVERSE AND REMAND for entry of an order consistent with this opinion.
THOMAS and RAY, JJ., concur.

. The decedent and the criminal assailant never met and there was no evidence decedent ever sexually harassed anyone at King’s Food other than the rank hearsay statement of the criminal assailant to the police.

. The criminal assailant told police he made several comments to his girlfriend about hurting the decedent; however, he felt that she thought he was just joking. Therefore, the certainty of the criminal assailant's actions was indiscernible, even to those closest to him.

. 1 Lex K. Larson, Larson’s Workers’ Compensation § 8.01 (rev. ed. 2013).

. This case presents a classic example of how courts can hyper focus on motive of a third party causing injury to an employee, ignoring a dangerous environment that also facilitated the injury. As Larson’s points out, "[t]he error here is a simple one: The court assumes that the claimant must prove both that the environment increased the risk of the attack and that it was motivated by something related to the employment. The correct rule is that either one or the other is sufficient to establish the causal link.” 1 Lex K. Larson, Larson’s Workers' Compensation § 8.01[l][b] (rev. ed. 2013) (emphasis added).