# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-96
_____

SEDGWICK CMS and THE
HARTFORD/SEDGWICK CMS,

    Appellants,

    v.

TAMMITHA VALCOURT-WILLIAMS,

    Appellee.

CORRECTED: Incorrect draft issued April 5, 2019. This opinion, which corrected typographical errors, should have been issued. There are no substantive changes.
MAILED: April 8, 2019
BY: KMS

_____

On appeal from an order of the Judge of Compensation Claims.
W. James Condry, II, Judge.

Date of Accident: April 27, 2016.

April 5, 2019

ON HEARING EN BANC

WINSOR, J.

Tammitha Valcourt-Williams, a workers' compensation claimant, tripped over her dog while reaching for a coffee cup in her kitchen. Because she had a work-from-home arrangement, and because her fall occurred during working hours, Valcourt-Williams sought workers' compensation benefits. The Judge of Compensation Claims determined the injury was compensable, concluding that the work-from-home arrangement meant the employer "imported the work environment into the claimant's home and the [c]laimant's home into the work environment." But

the question is not whether a claimant's "home environment" becomes her "work environment"; the question is whether the employment—wherever it is—"necessarily exposes a claimant to conditions which substantially contribute to the risk of injury." *Sentry Ins. Co. v. Hamlin*, 69 So. 3d 1065, 1068 (Fla. 1st DCA 2011) (citing *Acker v. Charles R. Burklew Constr.*, 654 So. 2d 1211 (Fla. 1st DCA 1995)). Here, the relevant risk was that the claimant might trip over her dog while reaching for a coffee cup in her kitchen. That risk exists whether the claimant is at home working or whether she is at home *not* working. It existed before Valcourt-Williams took her job, and it will exist after her employment ends (so long as she maintains a home with a dog). Because the risk did not arise out of the employment, we must reverse.

Valcourt-Williams was a workers' compensation claims adjuster for Sedgwick CMS, an appellant here. She was assigned to Sedgwick's Lake Mary office, but Sedgwick permitted her to work from her home in Sierra Vista, Arizona. Because of the different time zones, Valcourt-Williams began work at 4 a.m. local time to meet the Lake Mary office's 7 a.m. start time. On the day of the accident, Valcourt-Williams had been working three hours when she went downstairs for a cappuccino. As she reached to get a cup, she fell over one of her two dogs. The fall resulted in knee, hip, and shoulder injuries, as well as a workers' compensation claim. Sedgwick denied the claim, contending that the injuries did not arise out of the employment. After a hearing, the JCC sided with Valcourt-Williams, and Sedgwick appealed. The relevant facts are undisputed, and we review de novo the JCC's application of law to those facts. *Aills v. Boemi*, 29 So. 3d 1105, 1108 (Fla. 2010).

Employers must provide workers' compensation benefits when employees sustain injuries from accidents "arising out of work performed in the course and the scope of employment." § 440.09(1), Fla. Stat. (2016). Accidents occur "in the course and the scope of employment" when they occur "in the period of [] employment, at a place where [the employee] would reasonably be, while fulfilling her duties." *Bryant v. David Lawrence Mental Health Ctr.*, 672 So. 2d 629, 631 (Fla. 1st DCA 1996). Here, the parties agree that Valcourt-Williams's injuries occurred in the

2

course and scope of her employment: the injury was during work hours, her home was where she "would reasonably be," and her coffee break was a permissible "comfort break," *see Bayfront Med. Ctr. v. Harding*, 653 So. 2d 1140, 1142 (Fla. 1st DCA 1995) (noting that "a worker's attendance to personal comfort during a refreshment break . . . does not . . . remove the worker from the course and scope of his employment" (marks omitted)). "Course and scope" is not the issue here.

The issue here is whether the injury was "arising out of" the employment. *See Southern Bell Tel. & Tel. Co. v. McCook*, 355 So. 2d 1166, 1167-68 (Fla. 1977) (noting "separate elements" of "in the course" and "arising out of" employment); *Sentry Ins.*, 69 So. 3d at 1070 (workers' compensation does not cover accidents that occur in course and scope but that do not arise out of employment). As the Florida Legislature specified, "'[a]rising out of' pertains to occupational causation. An accidental injury or death arises out of employment if work performed in the course and scope of employment is the major contributing cause of the injury or death." § 440.02(36), Fla. Stat.; *accord Strother v. Morrison Cafeteria*, 383 So. 2d 623, 628 (Fla. 1980) ("[T]o be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances."). More simply, the "arising out of" limitation "requires that the risks that caused [c]laimant's accident and injuries [] be work-related." *Sentry Ins.*, 69 So. 3d at 1068. An accident is thus compensable only if "the employment necessarily expose[d] claimant to conditions that would substantially contribute to the risk of injury and to which the claimant would not normally be exposed during his nonemployment life." *Acker v. Charles R. Burklew Const.*, 654 So. 2d 1211, 1212 (Fla. 1st DCA 1995); *accord Glasser v. Youth Shop*, 54 So. 2d 686, 687-88 (Fla. 1951) (finding injury did not arise out of employment because claimant "was not on the stairs because of his employment; he would have been there in any event, regardless of whether he had brought his work home"); *Medeiros v. Residential Cmtys. of Am.*, 481 So. 2d 92, 93 (Fla. 1st DCA 1986); *Grenon v. City of Palm Harbor Fire Dist.*, 634 So. 2d 697, 699 (Fla. 1st DCA 1994) ("The employment must, in some way, contribute an 'increased risk' of injury peculiar to

3

that employment; otherwise, the statutory requirement that the injury 'arise out of employment' would be eliminated.").

This court has not hesitated to apply the "arising out of" limitation where workplace injuries flowed from risks unrelated to an employee's work. In *Medeiros v. Residential Communities of America*, for example, we held that if someone is injured at work after fainting—but would have fainted just the same had she *not* been at work—the resulting injury is not compensable. 481 So. 2d at 93. The claimant in *Medeiros* could not succeed because she could "not demonstrate[] that her physical surroundings on the job in any way contributed to the risk of injury any more than they would have in non-employment life." *Id.* That same rule applies whether the injury follows fainting, *see id.*, a heart attack, or—like here—a fall, *see, e.g., Leon Cty. Sch. Bd. v. Grimes*, 548 So. 2d 205, 208 (Fla. 1989) (finding fall noncompensable because claimant's "employment in no way contributed to her injury"); *Duval Cty. Sch. Bd. v. Golly*, 867 So. 2d 491, 494 (Fla. 1st DCA 2004) ("[W]e cannot say that a fall to a level concrete floor is automatically compensable, irrespective of the cause of the fall."); *Hernando Cty. Sch. Bd. v. Dokoupil*, 667 So. 2d 275, 277 (Fla. 1st DCA 1995) ("The fact that the claimant was in the course and scope of his employment when he fell is insufficient; there must be some finding that the employment created an increased risk of the fall itself or of the injuries which resulted.").

Regardless of the type of injury, compensability always turns on whether the employment led to the risk—whether there was "occupational causation," § 440.02(36), Fla. Stat. In other words, it is not enough to say this was a "workplace trip-and-fall" because there is no statutory trip-and-fall exception. Whether the accident is a fall—or anything else—a claimant cannot prevail unless there was occupational causation, a risk not existent in the claimant's "non-employment life." *Mederios*, 481 So. 2d at 93; *accord Glasser*, 54 So. 2d at 687 ("Since industry must carry the burden, there must then be some causal connection between the employment and the injury, or it must have had its origin in some risk incident to or connected with the employment, or have followed from it as a natural consequence."). In Valcourt-Williams's case, there is no such risk. Instead, it is undisputed

4

that features of Valcourt-Williams's "non-employment life"—her dog, her kitchen, her reaching for a coffee cup—caused the accident.

To adopt Valcourt-Williams's contrary view, we would have to hold that an employee's tripping over her own dog at home on a Friday is attributable to risks of employment while the same employee's tripping over the same dog at the same home on a Saturday is not. We would have to hold that a home light fixture's falling on an employee in the afternoon is attributable to risks of employment while the same home light fixture's falling on the same employee in the evening is not. And in doing so, we would have to set aside the "arising out of" limitation the Legislature enacted. *Cf. Southern Bell*, 355 So. 2d at 1168 n.3 (noting claimant's concession that the same "activity might give rise to the same [injury] if it occurred after work-hours, though in that case there would be no recovery" and concluding that, "[i]n short, [claimant] requested this Court to construe the 'arising out of' requirement out of the statute, for all practical purposes"); *Hernando Cty. Sch. Bd.*, 667 So. 2d at 276-77 ("[I]f all falls onto all surfaces were compensable, the statutory requirement that the injury arise out of the employment would be completely eradicated."); *Grenon*, 634 So. 2d at 699 ("The Florida Supreme Court has expressly declined to broaden the purpose of workers' compensation legislation to allow recovery for all injuries occurring in the workplace, including those arising out of conditions personal to the claimant which are not caused or aggravated by industry."). We ought not do that.

To be sure, a handful of our earlier cases have overlooked or ignored the statutory "arising out of" limitation, and we have not always been consistent in our application of that limitation. For example, in *Holly Hill Fruit Products, Inc. v. Krider*, this court upheld a claimant's award where the claimant had been hit by a car after leaving work to buy cigarettes. 473 So. 2d 829, 830 (Fla. 1st DCA 1985). The court held that the claimant's leaving work for an "off-premises refreshment break of insubstantial duration" was not enough to "remove [the claimant] from the course and scope of his employment." *Id.* at 830-31. But the decision never addressed whether the accident was "arising out of" the employment. *Id.* To the extent *Holly Hill* is read to allow

compensation without an "arising out of" component—without occupational causation—it cannot square with the clear statutory directive. *See also Bayfront Med. Ctr. v. Harding*, 653 So. 2d 1140 (Fla. 1st DCA 1995) (relying on *Holly Hill* to find compensable off-premises car accident while employee sought food or cigarettes); *Gray v. Eastern Airlines, Inc.*, 475 So. 2d 1288 (Fla. 1st DCA 1985) (relying on *Holly Hill* to find compensable a flight attendant's basketball injury from a YMCA pick-up game on a flight layover).

Moreover, in at least one case, we arguably suggested that any injury suffered on a "comfort break" within the course and scope of employment was necessarily "arising out of" employment. In *Pan American World Airways v. Wilmot*, we found compensable a flight attendant's injury after—while at dinner on a layover—she "attempted to light a cigarette, and burned her hand when the entire matchbook went up in flames." 492 So. 2d 1373, 1373 (Fla. 1st DCA 1986). This court considered the dinner to be within the "course and scope" of employment. But rather than analyze the "arising out of" limitation, the court rejected an argument that "risks arising from [smoking] are not job-related" by saying the argument "ignores another principle particularly applicable to workers' compensation cases, the personal comfort doctrine." *Id.* at 1374. To the extent *Wilmot* suggests that injuries necessarily arise out of employment whenever the personal-comfort doctrine brings the injury within the course and scope of employment, we reject it as inconsistent not only with the statute but also with the supreme court's *Southern Bell* decision. *See* 355 So. 2d at 1168 (rejecting compensability of bathroom injury sustained in course and scope of employment because the accident was "simply not one 'arising out of . . . employment" (alteration in original)). If any ambiguity remains, we hope to remove it now: For any injury to be compensable, it must "arise out of" the employment; there must be—as the statute says—"occupational causation." § 440.02(36), Fla. Stat.

None of this is to say, of course, that work-at-home arrangements immunize employers from workers' compensation claims. Just as employer-premises accidents can have occupational causation, so too can work-at-home accidents. Had

6

Valcourt-Williams suffered an injury from a risk her employment introduced—a repetitive stress injury from typing all day, as one potential example—it would be no answer for the employer to say she was hurt in her own home. *Cf. Metro. Dade Cty. v. Russell*, 637 So. 2d 69, 70 (Fla. 1st DCA 1994) (noting that accidents can be compensable if "the injury resulted from an effort, exertion, risk, or strain beyond that which is normally encountered in Claimant's non-employment life"). Nor are we holding—as the dissents mistakenly suggest—that there can be no compensability unless the employee is actively working at the time of the accident. An accident on a break, for example, might still "arise[] out of employment," § 440.02(36), Fla. Stat., where "the employment necessarily expose[d] claimant to conditions that would substantially contribute to the risk of injury," *Acker*, 654 So. 2d at 1212. But none of this relates to the situation we face here. Here, the risk at issue—that Valcourt-Williams would trip over her own dog in her own kitchen while reaching for a coffee cup—was not a risk her employment introduced.

The Legislature has determined the reach of the workers' compensation law. And under the system the Legislature enacted, "[i]f industry does not contribute to the risk of the accident resulting in injury, the workers' compensation law does not require industry to contribute to the cost of the injury." *Sentry Ins.*, 69 So. 3d at 1071. Here, the employer did not contribute to the risk that Valcourt-Williams would trip over her dog. The workers' compensation law therefore does not require the employer to cover the cost of the injury.

REVERSED.

B.L. THOMAS, C.J., and WOLF, LEWIS, ROBERTS, WETHERELL, ROWE, RAY, OSTERHAUS, KELSEY, WINOKUR, and JAY, JJ., concur.

BILBREY, J., dissents in an opinion joined by MAKAR, J.

MAKAR, J., dissents in an opinion joined by BILBREY, J.

M.K. THOMAS, J., recused.

7

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

BILBREY, J., dissenting.

Today, a majority of this court reverses decades of precedent regarding the compensability of workplace injuries under Florida workers' compensation law. In doing so, the court takes the benefits of the workers' compensation system from many workers who would previously have been protected in the event of workplace injuries. But the court also opens many employers and co-employees to tort liability where previously the immunity from liability provided by the "Grand Bargain" or "Great Trade Off" of workers' compensation applied.[1]

The majority proves today the maxim that bad facts make bad law. At first glance, it may appear incontrovertible that falling over one's own dog in one's own home is not compensable under workers' compensation. But distilled to the essential facts Claimant, Tammitha Valcourt-Williams, was injured in a trip and fall during work hours in her workplace (her house) when she fell over personal property (her dog) while attending to her personal comfort. The fact that Valcourt-Williams's home was also her workplace and her kitchen doubled as her workday breakroom should do nothing to alter our consideration of her claim.[2] Prior to today such a workplace injury from a neutral

---

[1] The history of workers compensation and the creation of the "Great Trade Off" is discussed in Lloyd Harger, *Workers' Compensation, A Brief History*, Florida Department of Financial Services, Division of Workers' Compensation, https://www.myfloridacfo.com/division/wc/infofaqs/history.htm (last visited March 26, 2019).

[2] The United States Census Bureau reports that in 2016, 7,591,793 Americans worked at home for a paid employer.

8

risk not caused by the employee's preexisting or idiopathic condition was undoubtedly compensable. But rather than just reverse the Judge of Compensation Claims (JCC) by finding (incorrectly) the dog to be a personal risk, the majority has attempted to change the previously settled law on "arising out of" so that now "arising out of" means **only** injuries that are directly caused by working rather than incident to employment. Given that, except in the bluest of blue-collar jobs, the vast majority of risks present in the workplace are constantly present throughout society, the majority decision today represents a radical shift in the law.

I believe that in denying the Employer/Carrier's motion for a summary final order, the JCC was correct to rule for Valcourt-Williams on the compensability issue. Applying established law, the JCC determined that accident was compensable and awarded benefits to Valcourt-Williams. Because the majority reverses, and in doing so goes beyond what the E/C argued in overturning decades of case law and essentially abrogating the long-settled personal comfort doctrine, I respectfully, but strongly, dissent.

## I. The Workplace Fall

As the en banc majority notes, the material facts relevant to this appeal are not in dispute. Valcourt-Williams was and at the time of the final hearing remained employed by Sedgwick CMS as a claims adjuster. On April 27, 2016, Valcourt-Williams resided in Sierra Vista, Arizona, and worked from her residence as a remote employee for Sedgwick under a telecommuting agreement. Valcourt-Williams's normal work hours were 4 a.m. to 12:30 p.m., Pacific Time, which matched Sedgwick's workday in its Florida office — 7 a.m. to 3:30 p.m., Eastern Time.

Valcourt-Williams took a mid-morning break from her work at 7 a.m. local time to get a beverage. She went from her second-floor home office downstairs to the kitchen where she retrieved a

https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=ACS_17_SPL_K200801&prodType=table (last visited March 26, 2019).

9

cup from the cupboard to make instant cappuccino. When she turned around she tripped over her dog and fell. She landed on her right knee and hip and was injured.

## II. The Claim for Workers' Compensation

Valcourt-Williams timely reported the fall and injury to Sedgwick (the E/C), which then authorized her to receive treatment at an emergency room. Less than two weeks after the fall, however, the E/C denied compensability. Valcourt-Williams retained counsel and filed a petition for benefits. In the response to the petition, the E/C asserted that the "[a]ccident and/or injury did not arise out of employment."

The E/C filed a motion for summary final order arguing the material facts were not in dispute and that a dispositive determination could be made as to whether the event was compensable because it was undisputed that Valcourt-Williams's fall was caused by her personally-owned dog. The E/C's motion alleged that the dog was a risk that Valcourt-Williams imported into the workplace, and these facts failed to establish a compensable work-related accident occurred that arose out of Valcourt-Williams's employment. In response, Valcourt-Williams argued that application of the personal comfort doctrine warranted a finding that the accident was compensable.

Following a hearing on the motion, the JCC agreed that the relevant facts were not in dispute and that Valcourt-Williams sustained a compensable workers' compensation accident which arose out of and in the course and scope of her employment. The JCC found that the fall was accidental, that it occurred during Valcourt-Williams's normal working hours, and that it occurred during a refreshment break. The JCC also found that the break was not in violation of any company rule, it was not in violation of any provision found in the telecommuting agreement (having found that the agreement did not limit Valcourt-Williams's ability to have pets in her home), it was a reasonable break necessary to meet Valcourt-Williams's personal comfort needs, and it was conducive to facilitate Valcourt-Williams's employment.

10

In rejecting the E/C's argument that the risk was a personal one imported into the workplace by Valcourt-Williams the JCC explained:

It was a neutral risk as permitted under the *Sentry Insurance Company* [*v. Hamlin,* 69 So. 3d 1065 (Fla. 1st DCA 2011)] case analysis. I find the Employer imported the risk into the claimant's home by authorizing and permitting a remote office to be established with reasonable expectations that comfort and refreshment breaks would be required during her eight hour work day. The Employer by virtue of the Telecommuting agreement imported the work environment into the claimant's home and the Claimant's home into the work environment. The Employer's Telecommuting Agreement did not restrict the area where she could take breaks, where she could use the bathroom or what personal property she could keep in her home, including pets. . . . [T]he Employer had the right to inspect and obtain photographs of the Claimant's work environment and never asked to do either. The Employer created to my mind what is tantamount to a satellite office for the Employer from which the Claimant was working and with it the risk of injury inside the home during normal working hours and conditions as long as the Claimant would be within the course and scope of her employment.

I find that the claimant was required to get up early and work in order to accommodate the employer's schedule in Lake Mary, Florida. Therefore she had to get up at 4:00 a.m. Pacific Standard time (an extremely early time for most people) in order to be at work for the employer in Florida at 7:00 a.m. It was reasonably foreseeable that the claimant would have to take comfort or refreshment breaks and the logical place with which she could do so was in her home kitchen and bathrooms. Such personal comfort activities provide a benefit to the employer and are reasonably incidental to the performance of her work activities. Therefore I find the accident indeed flowed from the employment as a

11

natural consequence and that taking a break to get something to drink during normal working hours has a relationship to her work and is a necessary function of her being able to continue to work for 8 hours during the day. *Bayfront Med. Ctr. v. Harding*, 653 So. 2d 1140 (Fla. 1st DCA 1995). I do not find as the E/SA argues that the Claimant imported the risk into the work place. I find the tripping over the dog would be no different than if she had slipped on a liquid substance on the floor, on a lose [*sic*] kitchen floor mat, or over her own two feet. I find the accident would be compensable.

In the summary final order, the JCC reserved jurisdiction to determine what injuries, if any, were related to the fall. A final merits hearing then took place. The JCC found that when Valcourt-Williams fell she sustained a traumatic loosening of hardware which had previously been implanted in her right knee — Valcourt-Williams having undergone bilateral knee replacement surgeries in 2009. The JCC directed the E/C to authorize ongoing treatment for Valcourt-Williams's work-related right knee injury as the nature of the injury and the process of recovery may require. The E/C was also directed to pay Valcourt-Williams temporary total disability benefits, along with penalties and interest.

### III. JCC Was Correct in Determining a Neutral Risk

I first address the E/C's argument that the JCC erred in finding that the accident arose out of Valcourt-Williams's employment because the risk of injury created by her dog was entirely personal and had no cognizable relationship to her employment. The en banc majority's opinion discusses this argument but in its ultimate holding goes well beyond what the E/C argued. Because the relevant facts are undisputed, the issue is a question of law, which is reviewed de novo. *See Airey v. Wal-Mart/Sedgwick*, 24 So. 3d 1264 (Fla. 1st DCA 2009).

Section 440.09(1), Florida Statutes (2016), states in part, "The employer must pay compensation or furnish benefits required by this chapter if the employee suffers an accidental compensable injury or death arising out of work performed in the course and the scope of employment." I begin with a recognition

12

that the analysis here should be unaltered by the fact that Valcourt-Williams's workplace was a non-traditional one. The personal comfort doctrine is a long-standing acknowledgement that, during a work day, an employee engaging in personal comfort activities, such as a refreshment break, benefits the employer so long as the activities are incidental to the performance of work activities. As we stated in *Harding*, "a worker's attendance to personal comfort during a refreshment break is conducive to the facilitation of the employment." 653 So. 2d at 1142 (*quoting Holly Hill Fruit Prods., Inc. v. Krider*, 473 So. 2d 829, 830 (Fla. 1st DCA 1985)). A worker remains in the course and scope of employment while attending to matters covered by the personal comfort doctrine. *Harding*, 653 So. 2d at 1141-42.

However, to satisfy the "arising out of work" requirement of section 440.09(1), the personal comfort doctrine applies only when there is a work-related or neutral risk. *Southern Bell Tel. & Tel. Co. v. McCook*, 355 So. 2d 1166 (Fla. 1977) (approving the personal comfort doctrine but holding that injury sustained by claimant attending to personal comfort is not compensable if workplace provided none of the risk and did not otherwise contribute to injury). If there is a work-related or neutral risk, then the injury is one "arising out of work."

We have discussed the three categories of risks causing workplace injuries as follows:

> [R]isks distinctly associated with the employment, risks personal to the claimant, and "neutral" risks—that is, risks having no particular employment or personal character. *Griffith v. Budget Rent-A-Car Systems, Inc.*, 692 So. 2d 294, 296 (Fla. 3d DCA 1997) (quoting A. Larson, *The Law of Workmen's Compensation* § 7.00 (1984)). Harms from risks peculiar to employment are universally compensable. *Id.* Harm caused by personal risks are universally noncompensable. *Id.* It is within the third category (neutral risks) that most controversy in modern compensation law occurs. *Id.*

*Hamlin*, 69 So. 3d at 1069-70. Therefore, compensable personal comfort cases must meet a three-part test, which we stated in *Hamlin* as follows:

13

(1)  The activity has been a traditional or routine part of the work place experience (incidental to work);

(2) The employee's participation in activity of this type has been held to benefit the employer by producing a refreshed employee; and

(3)  The injury results from either a work created risk or a neutral risk.

*Id.* at 1072.

Here, the E/C contends that the injury suffered was a result of a personal risk.  Yet, Valcourt-Williams's injury passes all three parts of the *Hamlin* test.  First, her coffee break was an activity that is a routine part of the workplace experience, and the JCC found that she was on a work break as permitted by Sedgwick.  Second, Valcourt-Williams's undertaking a break was a benefit to Sedgwick.  The JCC found "that taking a break to get something to drink during normal working hours has a relationship to her work and is a necessary function of her being able to continue to work for 8 hours during the day."  Third, the injury resulted from a neutral risk.  The JCC found that tripping over the dog was "no different than if she had slipped on a liquid substance on the floor, on a lose [*sic*] kitchen floor mat, or over her own two feet."  The JCC's finding is consistent with decades of our case law which holds a trip and fall in the workplace to be compensable so long as it was not caused by a claimant's idiopathic or preexisting condition.[3]  *See Ross v. Charlotte Cty. Pub. Sch.*, 100 So. 3d 781 (Fla. 1st DCA 2012) (fall due to foot caught in linoleum flooring compensable)*; Walker v. Broadview Assisted Living*, 95 So. 3d 942 (Fla. 1st DCA 2012) (foot slip while walking the hallway compensable); *Caputo v. ABC Fine Wine & Spirits*, 93 So. 3d 1097 (Fla. 1st DCA 2012) (fall with resulting head injury such that claimant did not know how the accident

---

[3] Hence workplace fainting, as mentioned by the en banc majority, or any other idiopathic or preexisting condition personal to a worker, does not arise out of employment and is therefore not compensable.

occurred compensable); *Lanham v. Dep't. of Envtl. Prot.*, 868 So. 2d 561 (Fla. 1st DCA 2004) (trip and fall on a sidewalk a quarter of mile from work while taking a walk on a paid break compensable); *Citrus Mem'l. Hosp. v. Cabrera*, 388 So. 2d 345 (Fla. 1st DCA 1980) (slip and fall in the workplace restroom compensable).

It is essential to the analysis that Valcourt-Williams was no more engaged with her dog when she tripped than she would have been, for instance, with a briefcase, backpack, purse, gym bag, or even her own shoes had she tripped over any of those items instead — all of which are employee-owned property commonly brought into the workplace. The JCC recognized as much when he noted that had Valcourt-Williams been playing with her dog, the injury would **not** have been compensable.[4] It is foreseeable that an employee will bring or attempt to bring the employee's own personal property, not otherwise prohibited by the employer, into the workplace and that the property or the attempt to procure the property may create a neutral risk resulting in a compensable injury. *See Harding*, 653 So. 2d at 1142 (injury from off-premises automobile accident on a break during working hours while attempting to get food or cigarettes compensable); *Louis v. Louis's Amoco*, 534 So. 2d 417 (Fla. 1st DCA 1988) (employee's injuries from drinking contaminated soft drink purchased from employer compensable); *Krider*, 473 So. 2d at 830 (injury to claimant struck by automobile while walking across road to purchase cigarettes on break during work hours compensable); *Baker v. Orange Cty. Bd. of Cty. Comm'rs*, 399 So. 2d 400 (Fla. 1st DCA 1981) (injury from battery operated socks claimant wore to ward off frostbite compensable).

Other states have considered workplace falls over personal property and found them to be compensable under workers'

---

[4] The risk here that is compensable is the neutral risk of a workplace trip and fall. Had the Claimant been bitten by her dog, the risk to be considered would have instead been the risk of an attack by her dog — presumably a personal risk in most workplaces.

compensation. In *McBride v. Midwest Estate Buyers, LLC*, No. 93A02-1612-EX-2920, 86 N.E.3d 452 (table), 2017 WL 2492774 (Ind. Ct. App. 2017), a jewelry store clerk tripped and fell when the zippers on the inside of her boots hooked together. The court in *McBride* discussed the same three categories of risks we considered in *Hamlin*. *McBride* at \*2. In *McBride*, there was no pre-existing illness or condition involved, thus, the fall was not caused by McBride's personal risk. *Id.* Rather, the appellate court reasoned, in reversing the compensation board's denial of compensability, that

> [a]lthough her choice of clothing and footwear is a personal choice and in this case was not dictated by company policy, an employee of a fine jewelry store would certainly be required to wear some form of footwear. Further, McBride testified she often dressed up and tried to look stylish for her work which involved meeting with customers. Therefore, we think McBride's case falls within the third category, those risks neither distinctly employment related nor distinctly personal in character.

*Id.* at \*3.

In *Sandberg v. JC Penney Co.*, 260 P. 3d 495 (Or. Ct. App. 2011), claimant was injured while working in her home when she tripped over her dog while going to the garage to retrieve fabric samples for work. The controversy, like our situation here, focused on the requirement that the injury arise out of and occur in the course of employment. The court noted that while working, the claimant's home environment became her work environment. 260 P.3d at 500. Quoting *Larson's Workers' Compensation Law,* the court noted that "the hazards of home premises encountered in connection with performance of the work are also hazards of the employment." *Sandberg*, 260 P.3d at 500 (quoting Arthur Larson and Lex K. Larson, 1 *Larson's Workers' Compensation Law* § 16.10 [4], 16-37 (2009)). The court also noted that "although the employer may not have had control over claimant's dog, it had control over whether claimant worked away from the studio." *Sandberg*, 260 P.3d at 500. The court concluded by analogizing that if "claimant tripped over a dog and

injured herself while meeting with a customer in the customer's home, her injury would arise out of her employment," so injuring herself by tripping over the dog while working at home as a requirement of employment also arose out of work. *Sandberg*, 260 P.3d at 501.

When neutral risks result in workplace injuries, the personal comfort doctrine instructs that those injuries will be found compensable because an employee attending to personal comfort "is conducive to the facilitation of the employment." *Krider*, 473 So. 2d at 830-31. *Cf. Galaida v. AutoZone, Inc.*, 882 So. 2d 1111, 1113 (Fla. 1st DCA 2004) (explaining that "[b]eing exposed to a firearm, however, is not a foreseeable consequence of an authorized cigarette break, especially when the possession of a firearm is strictly prohibited by the employer. Moreover, Galaida's possession of a firearm, in violation of his employer's policy, was not conducive to the employer's interests.").[5]

---

[5] As we stated in *Galaida*, "The personal comfort doctrine incorporates a foreseeability element to the cause of injury." *Id.* at 1112. Given, *Ross*, *Walker*, *Caputo*, *Lanham*, and *Cabrera*, among other cases, it is clearly foreseeable that an employee would trip and fall in the workplace. If the foreseeability is focused on dogs or other pets, as Judge Makar discusses in his dissent, it is clearly foreseeable that an American household would have a common house pet. Dissenting op. at 34 (Makar, J.). The foreseeability of the presence of a dog here may have changed had it been banned by Sedgwick, as the employer banned the firearm in *Galaida*, but dogs were not prohibited by Sedgwick.

## IV. Majority Goes Beyond What E/C Sought

In arguing that we should reverse the JCC, the E/C claimed only that Valcourt-Williams's risk of tripping over her dog was a personal risk under the *Hamlin* framework. The E/C had previously made the personal risk argument before the JCC. As set forth above, I disagree with the E/C's argument. But if the court were to adopt the E/C's contention and hold that the presence of a dog was a personal risk akin to the firearm in *Galaida* that would not cause a paradigm shift in Florida workers' compensation law. I respectfully submit that the en banc majority has gone beyond what the E/C has sought, has upended the long-standing personal comfort doctrine, and has now defined "occupational causation" in "arising out of" to mean only "directly caused by" engaging in the core functions of employment. *See* § 440.02(36), Fla. Stat.

Barring fundamental error, we can only reverse on what is argued below. *Davis v. State*, 136 So. 3d 1169 (Fla. 2014); *Williams v. State*, 213 So. 3d 1123 (Fla. 1st DCA 2017). Further, we cannot reverse on a ground not argued on appeal. *See I.R.C. v. State*, 968 So. 2d 583, 588 (Fla. 2d DCA 2007) (noting that to reverse based on grounds not argued by the appellant would be "at odds with the structure of the appellate process which requires that a reviewing court ordinarily reverse only on the basis of the specific arguments presented by the appellant"). As the above quotation from the JCC's decision shows, the issue he considered was the nature of the risk under our *Hamlin* framework. Neither before the JCC nor before our court did the E/C argue that our "arising out of" jurisprudence was wrongly decided and needed to be discarded en banc and en masse.

Part of the problem with the en banc majority's reasoning is the majority opinion at times mixes "course and scope of employment" with "arising out of." The majority claims that to hold for Valcourt-Williams, "we would have to hold that an employee's tripping over her own dog at home on a Friday is attributable to risks of employment while the same employee's tripping over the same dog at the same home on a Saturday is not." Majority op. at 5. Yes, we would, and we should. But this is a course and scope of employment consideration. If injured

18

during a break from work during the workday, under the personal comfort doctrine the employee remains in the course and scope of employment. *Lanham*, 868 So. 2d at 563. This is so regardless of whether the injury occurs on or off the employer's premises. *Id.* If an employee is injured outside of the workday, then barring various exceptions not applicable here, the employee is not in the course and scope of employment, so the injury is not compensable. *See Fidelity & Cas. Co. of New York v. Moore,* 196 So. 495, 496 (Fla. 1940) (holding that generally, "the injury must occur within the period of the employment").

Of course, although not addressed by the majority, "arising out of" and "course and scope" "are part of a single test, such that the strength of one element may cure the weakness of the other." *Grenon v. City of Palm Harbor Fire Dist.*, 634 So. 2d 697, 699 (Fla. 1st DCA 1994). "The phrase 'arising out of' refers to the origin of the cause of the accident, while the phrase 'in the course of employment' refers to the time, place and circumstances under which the accident occurs." *Id.* (citing *Bituminous Cas. Corp v. Richardson*, 4 So. 2d 378 (Fla. 1941)).

The majority opinion puts at risk many established doctrines of Florida workers' compensation by interpreting "occupational causation" in "arising out of" to only mean directly performing work. *See* § 440.02(36), Fla. Stat. We considered this exact issue in upholding the "premises rule" in *Vigliotti v. K-Mart Corp.*, 680 So. 2d 466 (Fla. 1st DCA 1996). The premises rule provides workers' compensation benefits to employees who are "off the clock" and not actually engaged in work, but who are preparing for or departing from work when injured on the employer premises. In *Vigliotti,* we stated:

> We have considered carefully K-Mart's contention that the phrase "work performed" must be construed to include only actual performance of primary job duties by an employee. As previously noted, this construction would broaden the potential tort liability for every employer in Florida. Moreover, this construction would contravene the legislative intent to ensure the prompt delivery of benefits to the injured worker by an efficient and self-executing system. § 440.015, Fla. Stat. Indeed,

19

K-Mart's construction would lead to expensive and time consuming judicial inquiry in a broad range of cases that are now undoubtedly handled administratively without the intervention of attorneys. Scenarios discussed in the briefs and at oral argument included a roofer injured while climbing down a ladder at the end of his shift and a clerical worker injured while taking a restroom break. Under K-Mart's view, employers would be completely free to argue in such cases that work performed did not contribute to the injury, and hearings would then be required on this issue. Such a procedure would be neither efficient nor self-executing.

*Vigliotti*, 680 So. 2d at 467.

The majority rationale also calls into question, without being able to overturn, the "bunkhouse rule" approved by the Florida Supreme Court. *See Wilson Cypress Co. v. Miller*, 26 So. 2d 441 (Fla. 1946). The bunkhouse rule instructs "that when the contract of employment contemplates that the employee shall sleep on the employer's premises, as an incident to the employment, and is injured while not engaged on a purely personal mission, the injury is compensable." *Id.* at 442. There Miller was sleeping on his employer's houseboat when killed in a fire. *Id.* at 441. Clearly, Miller was not engaged in work at the time, nonetheless the Florida Supreme Court found his death compensable. *Id.* The majority rationale would also call into question the "horseplay doctrine" which holds compensable those injuries resulting from "an insubstantial deviation . . . which does not necessitate the complete abandonment of the employment and the concentration of all energies for a substantial part of the working time." *Boyd v. Florida Mattress Factory, Inc.*, 128 So. 2d 881, 882 (Fla. 1961).

Many of the cases cited by the majority in support of the argument that Valcourt-Williams's fall does not "arise out of" work are in fact cases where the claimant's idiopathic condition caused the injury. *See, e.g., Southern Bell Tel. & Tel. Co. v. McCook,* 355 So. 2d 1166 (Fla. 1977) (congenital abnormality in lower back); *Acker v. Charles R. Burklew Constr.,* 654 So. 2d 1211 (Fla. 1st DCA 1995) (preexisting degenerative arthritis);

20

*Medeiros v. Residential Cmtys. of Am.,* 481 So. 2d 92 (Fla. 1st DCA 1986) (dizziness from a prior non-work-related automobile accident); *Grenon* (aggravation of preexisting back injury); *Leon Cty. Sch. Bd. v. Grimes*, 548 So. 2d 205 (Fla. 1989) (fall caused by leg brace worn due to polio). There was no argument here that the fall was caused by Valcourt-Williams's preexisting knee surgeries. Even as to idiopathic falls, there is an exception not applicable here under which injuries from falls are found to arise out of employment if "the injuries from the fall can be attributed to some increased hazard attendant to the job such as where the fall is onto dangerous objects." *Foxworth v. Fla. Indus. Comm'n*, 86 So. 2d 147, 151 (Fla. 1955); s*ee also Duval Cty. Sch. Bd. v. Golly*, 867 So. 2d 491 (Fla. 1st DCA 2004).

The majority incorrectly cites the exception applicable to idiopathic conditions mentioned in *Golly* as if it was the rule. Majority op. at 4. But in *Walker* we recognized that only if a personal or idiopathic condition is involved is it necessary for "claimants to establish that 'the employment itself created the hazard of the risk.'" 95 So. 3d at 943 (quoting *Hernando Cty. v. Dokoupil*, 667 So. 2d 275, 276 (Fla. 1st DCA 1995)).[6] If an idiopathic or preexisting injury is not involved, then it does not matter that the injury could have also occurred had the employee not been at work. "Only if the employer and carrier have satisfied that burden of proof [that an idiopathic or preexisting condition was involved] is it appropriate for the JCC to hold the claimant to the more stringent standard for compensability . . . to establish that the employment exposed the claimant to risk of

---

[6] Furthermore, had the majority provided a complete quotation from *Metropolitan Dade County v. Russell*, 637 So. 2d 69 (Fla. 1st 1994), this point would have been demonstrated. Majority op. at 7. In *Russell* we said, "**If the JCC finds that Claimant has an idiopathic condition**, then before the causal connection can be found and the work injury deemed compensable, the JCC specifically must find also that Claimant demonstrated that the injury resulted from an effort, exertion, risk, or strain beyond that which is normally encountered in Claimant's non-employment life." *Id.* at 70 (emphasis added).

21

injury greater than the employee would normally encounter in non-employment life." *Bryant v. David Lawrence Mental Health Ctr.*, 672 So. 2d 629, 631 (Fla. 1st DCA 1996). The majority opinion discards this well-stated holding from *Bryant*.

In *Ross*, we wisely rejected a JCC's conclusion that "because Claimant could not establish an increased risk of harm associated with her employment . . . Claimant could not establish that the injury arose out of employment because the accident could have happened elsewhere." 100 So. 3d at 782. We held that such a conclusion would implicate section 440.10(2), Florida Statutes, which provides that, absent narrow exceptions, "[c]ompensation shall be payable irrespective of fault as a cause for the injury." Again citing *Walker*, we stated, "Thus, in the absence of any medical evidence to establish the existence of a pre-existing condition, it was not necessary for Claimant to show an increased risk of harm associated with her employment in order to establish the causal connection between her employment and her accident." *Ross*, 100 So. 3d at 782-83.

The majority also discredits the personal comfort doctrine without being able to explicitly overrule it since the doctrine was approved by the Florida Supreme Court in *McCook*. There the Court stated, "The fact that McCook was attending to a personal matter at the time of the accident is irrelevant, since it was incidental to employment and therefore a matter within the 'personal comfort doctrine.'" 355 So. 2d at 1168, n.2 (citing 1 A. Larson, *The Law of Workmen's Compensation* s. 12.00 (1972)). The approval of the personal comfort doctrine under Florida law seems to be rooted in the Florida Supreme Court's recognition that an employee is in the course and scope of employment if the employee is "reasonably fulfilling the duties of this employment or **engaged in doing something incidental to it**." *Fidelity & Cas. Co. of New York v. Moore,* 196 So. 495, 496 (Fla. 1940) (emphasis added). The majority's narrow definition of occupational causation is contrary to the Florida Supreme Court approving coverage for injuries arising from incidental causes.

Many of the injuries which we have previously found compensable could have just as easily occurred outside of work. Under the majority's rationale these injuries would not be

compensable, contrary to our holdings in *Caputo*, *Walker*, and *Ross*, because the risk does not flow only from employment. Majority op. at 6-7. Since most employees walk, whether on or off the job, under the majority's view no workplace slip and fall would be compensable. Since all humans must eat, drink, and excrete, whether on the job or off, any break from an employee's occupation for personal comfort would not be compensable. In fact, in most occupations, many of the functions of daily work life are also performed outside of the workplace. Office workers complete paperwork at home. Restaurant workers cook and serve food at home. Childcare workers care for children at home. Even many blue-collar workers perform similar work at home — autoworkers fix their own cars, custodians clean their own homes, shop workers engage in their trade as hobbyist or volunteers. By limiting compensability of a workplace injury to only those injuries which narrowly flow directly from the employment, the majority has overturned (or at least attempted to overturn) over forty years of case law, disregarded the settled definition of "arising out of," and severely limited the benefits of workers' compensation.

Uncertainty has undoubtedly been injected into the workers' compensation system by the majority's holding. Are the personal comfort and other long-established doctrines of workers' compensation law extant or extinct after today? I think these doctrines survive since they spring from the Florida Supreme Court; but how should the majority's narrow interpretation of occupational causation be seen by a claimant, employer, claim's adjuster, attorney, or JCC? Markets crave certainty, and the Florida workers' compensation system is a huge market.[7] By the

---

[7] "In 2017, 242 privately-owned insurers actively wrote workers' compensation insurance in Florida. In total, private sector insurers wrote $3,183,302,670 in premium." *2018 Workers' Compensation Annual Report*, Florida Office of Insurance Regulation, https://www.floir.com/siteDocuments/2018WorkersCompensation AnnualReport.pdf (last visited March 26, 2019).

majority's opinion we have injected substantial uncertainty in the multibillion-dollar Florida workers' compensation marketplace.

## V. Potential Impact of Loss of Exclusivity of Remedy

The Grand Bargain of workers' compensation provides a great benefit to employers and co-employees in mandating the statutory benefits provided by workers' compensation as the exclusive benefits an employee can receive for accidental injury from a covered employer.  *See* § 440.11, Fla. Stat.  But for workers' compensation protection, exclusivity of remedy would not be present, and an employee could sue the employer and co-employees for negligence.  *See Fidelity & Ca. Co. of N.Y. v. Bedingfield*, 60 So. 2d 489 (Fla. 1952).

By disclaiming workers' compensation coverage (or more likely its workers' compensation carrier disclaiming coverage), the employer may be opening itself and its employees to tort liability.  In *Schroeder v. Peoplease Corp.*, 18 So. 3d 1165 (Fla. 1st DCA 2009), this court determined that a genuine issue of material fact existed as to whether the employer's notice of denial of workers' compensation benefits precluded the employer from asserting an immunity defense.  "Whether estoppel is appropriate in this case and whether the employer took irreconcilable positions is dependent upon the meaning to be accorded the notice of denial."  *Id.* at 1170.  More recently, the Third District affirmed the trial court's denial of a motion for summary judgment based upon the defense of workers' compensation immunity where the carrier denied benefits on grounds that the employees' injuries were not the result of an accident in the course and scope of their employment.  *Ocean Reef Club, Inc. v. Wilczewski*, 99 So. 3d 1 (Fla. 3d DCA 2012).

The Fifth District agrees.  In *Byerley v. Citrus Publishing, Inc.*, 725 So. 2d 1230 (Fla. 5th DCA 1999), the court concluded:

> Thus, to permit an employer to deny benefits then later assert immunity because the employee is entitled to benefits would be to render this statutory provision [§ 440.11, Fla. Stat.] meaningless.  In this case, the notice of denial stated that Byerley's injury was not covered

because it did not occur in the course and scope of her employment, Byerley accepted and relied on the denial, bore her medical expenses, then sued the employer in tort as permitted by the statute. Here, the elements of estoppel are shown, and therefore, the employer is not entitled to summary judgment on the basis of the Workers' Compensation Act.

*Id.* at 1232-33; *see also Gil v. Tenet Healthsystem N. Shore, Inc.,* 204 So. 3d 125 (Fla. 4th DCA 2016).

Here, even though Valcourt-Williams would likely not have a tort cause of action, if we eliminate compensability for workplace slip and falls — injuries incidental but not directly caused by employment — other employees who suffer workplace injuries which are no longer compensable would likely be able to sue. Clever attorneys could bring civil actions against employers for workplace falls caused by tripping over another's property, failing to provide safe footwear, failing to have non-skid flooring, failing to inspect, failing to maintain the premises, and the myriad of other grounds asserted for premises liability.

Additionally, eliminating compensability for workplace slip and falls opens the possibility of an injured worker suing fellow employees. Those fellow employees are currently immune from suit for negligence under section 440.11(1), Florida Statutes. If exclusivity does not apply, it is easy to imagine a cause of action arising out of a fellow employee's spilt beverages, bags or other obstacles left on the floor, a foot sticking out from behind a desk, or accidental jostling. In absence of workers' compensation exclusivity, one could see many situations where a fellow employee risks tort liability for automobile accidents. *See, e.g. Abraham v. Dzafic,* 666 So. 2d 232, 233 (Fla. 2d DCA 1995) (finding a co-worker was immunized from suit for automobile negligence where both co-workers were traveling from a jobsite "to the same hotel for rest and relaxation").[8]

---

[8] Furthermore, bring your child to work days and bring your pet to work days would seem to be especially fraught with the

Today the majority opinion potentially eliminates the many benefits of workers' compensation and substitutes the uncertainty of tort claims.[9] We wisely chose not to take that action 23 years ago in *Vigliotti* when confronting what was then a new statutory definition of "arising out of," and nothing has changed since. In *Vigliotti*, we expressed concern that to construe "arising out of" as the majority does today "would result in claimants . . . bringing suit in tort against their employers for injuries they have suffered during work hours, while they are on the employers' premises, but when they are not literally performing work." 680 So. 2d at 487. Today the majority charts a course towards uncertainty and away from the Legislative intent "to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer." § 440.015, Fla. Stat. (2016).

## VI. Conclusion

Because the risk Valcourt-Williams encountered when she was attending to her personal comfort on her refreshment break was a neutral risk of a workplace trip and fall, she met her burden to prove that her accident arose out of and in the course and scope of her employment and was therefore compensable. Because the majority reverses and goes far beyond what the E/C sought in overturning or otherwise questioning many established workers' compensation cases, and in doing so opens employers and co-employees to tort liability, I respectfully, but strongly, dissent.

---

possibility of co-employee lawsuits under the majority's change to the meaning of "arising out of."

[9] Undoubtedly some injured workers would be happy for the substitution. The potential damages for tort claims include non-economic damages such as pain and suffering, emotional distress, and loss of consortium which are not present as Florida workers' compensation benefits.

MAKAR, J., dissenting.

I join Judge Bilbrey's opinion, which explains why jurisprudential change is unwarranted in this "trip-and-fall-during-a-personal-comfort-break" case, which ought to be affirmed based on the thorough factual findings and thoughtful legal analysis in the JCC's final summary order (*see* Appendix). A few points merit mention.

To begin, the only issue in this workers' compensation case is whether the workplace accident that occurred during an authorized comfort break arising from an authorized work-at-home arrangement is compensable. As fate would have it, the employer is a workers' compensation claims processing company, Sedgwick Claims Management Services, Inc. ("Sedgwick"), and the employee, Tammitha Valcourt-Williams ("V-W"), is an experienced workers' compensation account claims adjuster. Sedgwick and V-W entered into a Telecommuting/Remote Work Agreement for V-W to continue working for the company from her new home in Arizona, from 4:00am-12:30pm PST, to match the normal workday hours in Sedgwick's home office in Lake Mary, Florida, where she'd been working. In Arizona, V-W worked from one of her townhome's upstairs bedrooms, which she dedicated entirely to her work for Sedgwick, and furnished with a desk, chair and other office equipment at her own expense; Sedgwick provided the computer.

On April 27, 2016, V-W took a mid-morning break, walked downstairs to her kitchen, and tripped and fell while making an instant cappuccino.[1] No dispute exists that Sedgwick permitted its employees to take personal comfort breaks, that V-W was on an authorized personal comfort break in a location in her home where a break was allowable (her kitchen), and that

---

[1] During the pendency of her workers' compensation claim, V-W emailed her fact pattern (without identifying it was her situation) to defense counsel that the carrier had used in the past who opined that it was compensable ("Unfortunately, this appears to be a compensable claim, based on these facts.").

27

she was engaging in a permissible activity (making a beverage) when the trip and fall occurred. An accidental slip and fall under such workaday circumstances is generally compensable—whether it occurred in Sedgwick's Lake Mary home office or in V-W's home office—under the personal comfort rule. *Sentry Ins. Co. v. Hamlin*, 69 So. 3d 1065, 1072 (Fla. 1st DCA 2011) ("The courts have consistently awarded benefits to accidental injuries suffered while an employee is engaging in personal comfort activities, based on the rationale that such activities provide a benefit to the employer and are reasonably incidental to the performance of work activities."). As this Court held in *Hamlin*, an employee who engages in acts of "personal comfort such as eating a snack, smoking, or taking a restroom break" engages in "an activity that the law deems as incidental to work" and thereby arising from the work itself. *Id.* For example, injuries to a worker who is hit by a car while walking across the street to a convenience store are compensable because an "off-premises trip . . . motivated by a desire to purchase cigarettes . . . was a foreseeable and non-prohibited refreshment break activity." *Holly Hill Fruit Prods., Inc. v. Krider*, 473 So. 2d 829, 830 (Fla. 1st DCA 1985); *cf. Hamlin*, 69 So. 3d at 1072 (worker who was injured by a tow truck attempting to repossess his car from the employer's parking lot, was deemed to *not* be on a personal comfort break and thereby denied coverage).

Given this background, the question of "exceptional importance" in this en banc hearing involving the personal comfort rule is whether V-W tripping over her *Shih Tzu*—versus her handbag, a kitchen chair, an open cabinet drawer, a newspaper, spilled coffee/milk, a space heater, a rug/floor mat, a doorsill, a Roomba,® untied shoelaces, a power cord/computer cable, a banana peel, a recycling bin, a pet water bowl, her son's schoolbooks or spattered oil from her husband cooking breakfast,[2] a loose floorboard or uneven tile, a trash can or bag, or her own feet while reading an email on her cellphone—renders her claim

---

[2] V-W lives with her husband (a professional cook) and a 14-year old son along with a 50-pound Husky, a 22-pound Shih Tzu, and a cockatoo.

per se non-compensable. *See* Fla. R. App. P. 9.331(a) & (c) (2019) ("En banc hearings and hearing" impermissible "unless the case or issue is of exceptional importance") ("A hearing en banc may be ordered only by a district court of appeal on its own motion."); IOP 6.4 (2019).

To resolve this case, the key factual inquiry is whether Sedgwick prohibited dogs in the home work environment and, if not, was it foreseeable that an accident of this type might arise in a personal comfort break. In this regard, it has been noted that "[e]very 'personal comfort' case accepted as compensable by [this Court] has met three prongs:

> (1)    The activity has been a traditional or routine part of the work place experience (incidental to work);
>
> (2)    The employee's participation in activity of this type has been held to benefit the employer by producing a refreshed employee; and
>
> (3)    The injury results from either a work created risk or a neutral risk."

*Hamlin*, 69 So. 3d at 1072. Because the first two prongs are met in this case, the remaining issue is whether the record evidence establishes that the trip and fall was due to a work-related or neutral risk. *Id.* ("The personal comfort rule only applies when there is either a work-related, or neutral risk."). Work-related risks are those directly associated with the work performed, such as risks of injury from dangerous or malfunctioning machines, risks of increased occupational diseases, and the like. Neutral risks are neither entirely work-related nor directly related to an employee's personal idiopathic health deficiencies; they are risks common to employees, such as motor vehicle accidents, slips on wet surfaces, falls on stairs, and so on.

Trips, slips, and falls are consistently among the top two-three causes of workplace injuries and workers compensation

29

costs.[3] They are inherent in the workplace, whether it is a company's home office, a field office, a work-at-home office, or an off-premises location where a non-prohibited refreshment break occurs. The neutral risk of a fall exists in each of these locales during a personal comfort break and is thereby work-related. Not every injury that occurs during a personal comfort break is compensable, of course, but slip and falls typically are because of the control that employers have over the time, place, and manner of work breaks; the neutral nature of slips and falls; and the foreseeability test that weeds out implausible or questionable scenarios. *See Galaida v. Autozone, Inc.*, 882 So. 2d 1111, 1113 (Fla. 1st DCA 2004) (employee who brought a gun onto employer's premises and accidentally shot himself during a cigarette break was not a "foreseeable consequence" to which compensability applies under personal comfort rule). It is expected that persons who are allowed to work from their homes will take periodic breaks and may suffer compensable injuries from falls arising from a range of causes. The exceptions to compensability in these situations are where (a) an employee has a personal idiopathic health condition or some other disqualifying pre-existing personal factor that caused her injury, *Medeiros v. Residential Communities of Am.*, 481 So. 2d 92, 93 (Fla. 1st DCA 1986) ("When a claimant suffers from an idiopathic, or pre-existing, condition which results in injury, the injury is compensable only if the claimant can show that it 'arose out of' his employment."); (b) the risk is one the employer controls and has prohibited, *Galaida*, 882 So. 2d at 1112-13 (noting that to cross the street to purchase cigarettes was a "non-prohibited refreshment break," but that firearm causing injury was "strictly prohibited"); or (c) the risk encountered during the break is unforeseeable, *Id. at* 1112 ("The personal comfort doctrine incorporates a foreseeability element to the cause of injury.").

---

[3] *See* National Safety Council, Injury Facts, Top Work-Related Causes, https://injuryfacts.nsc.org/work/work-overview/top-work-related-injury-causes/ (last visited March 26, 2019); National Safety Council, Injury Facts, Workers' Compensation Costs, https://injuryfacts.nsc.org/work/costs/workers-compensation-costs/ (last visited March 26, 2019).

Only the latter two factors—foreseeability and employer control—are at issue in this case.

Let's first look at employer control of the home work environment. Sedgwick's pro forma telecommuting agreement, which says the company "considers telecommuting to be an appropriate work arrangement," is slightly over three-pages, single-spaced and addresses seven topics: the scope of the agreement, the terms and termination of the agreement, performance expectations, travel, work environment, equipment and supplies, liability and miscellaneous matters. It makes clear that telecommuting "is not an entitlement," is "permitted in [Sedgwick's] sole discretion," and embodies Sedgwick's authority to control the nature of the arrangement and the work-at-home environment.

The agreement, however, says very little about the work-at-home environment other than that the employee "must establish an appropriate work environment free from distractions within his or her home. A professional business environment must be maintained that includes, but is not limited to, the elimination of background noise" and must not be "a replacement for dependent care." The "home office" itself "must be clean and free from obstructions" and the "work station" is to be "designed for safe, comfortable work." Photos of the "work station" might be required "for approval" by Sedgwick (who "has the right to monitor activity" on all its equipment and communications systems).

The agreement was silent on all other aspects of the home office and its environment, including standards or guidelines for bathrooms, kitchens and other places where refreshment/personal comfort breaks would occur within the home.

Sedgwick, despite its full control over the terms of the telecommuting agreement and the conditions of the work-at-home environment, asserts that it does not have such power; instead, it asserts that it is V-W who has "sole control" over the situation. Sedgwick characterizes this case as one in which the JCC "declared a personal, *uncontrollable*, unforeseeable risk" as a work-related risk. (Emphasis added). But that's simply not the

case. Sedgwick had the authority to prohibit all pets, including dogs, from the work environment but did not do so. At best, its corporate representative testified in deposition only that pets were not permitted in the Lake Mary, Florida, office, leaving unanswered how Sedgwick handles its telecommuting arrangements with each of its work-at-home employees. Sedgwick points to the "free from obstruction" language in its agreement, but that only applies to the "home office" (which is not where V-W fell); Sedgwick also presented no definition or interpretation of this term and how an employee would understand that it included a dog. More importantly, compensable workplace accidents occur even where a fall is over an "obstruction"—an employer cannot eliminate the compensability of all workplace trips/falls simply by pointing to a policy that workspaces must be free of "obstructions."

Because this case was decided on a final summary order, Sedgwick has accepted the JCC's factual findings without challenge; Sedgwick only contests the legal conclusion of compensability. The JCC found:

- Sedgwick "had the right to inspect [V-W's] work premises and review her work situation for safety and to make sure that she had a comfortable working situation.
- Sedgwick "never did inspect or view her home office set-up either in person or by video or photographs."
- "*The Telecommuting Agreement did not limit the personal property that the Claimant could have in her home*. The agreement notably required the *office space* to be free from hazard. Yet there is no evidence of hazard in the *office space* to suggest that the claimant was non-compliant with the agreement." (Emphasis added).
- V-W says "she owned dogs when she worked" in the Lake Mary office," but "whether this is true or not, the *Telecommuting Agreement does not limit the Claimant's ability to own and possess pets in her home office.*" (Emphasis added).

These factual findings, among others in the order (*see* Appendix), buttress the conclusion that Sedgwick had control over the home environment (which it did not exercise) and that Sedgwick failed

32

to prove that V-W was prohibited from having her personal property, including her Shih Tzu, in her kitchen where the refreshment break occurred. In essence, V-W's home environment was her work environment, and Sedgwick had the authority to control and impose restrictions as to the risk at issue despite its failure to do so. *Sandberg v. JC Penney Co. Inc.*, 260 P.3d 495, 500 (Or. Ct. App. 2011) (holding employer's claim that it lacked control over the risk of a dog in a work-at-home studio "is unwarranted because, although the employer may not have had control over claimant's dog, it had control over whether claimant worked away from the studio."). The ordinary hazards in an employee's home office, kitchen or bathroom that are encountered in connection with a work-related activity, such as a refreshment break, are hazards of the employment unless excluded by the employer; here, they were not, thereby supporting compensability. Moreover, no evidence suggests that V-W "imported" a purely personal risk into the workplace, such as an idiopathic condition; *see Leon County Sch. Bd. v. Grimes*, 548 So. 2d 205 (Fla. 1989) (claimant's fall, which resulted solely from pre-existing personal medical condition, was not compensable); instead, Sedgwick authorized the work-at-home arrangement and did not exclude a common houseful feature, a dog, from its telecommuting agreement and must bear the foreseeable consequences.

Next, let's turn to foreseeability. Was it foreseeable that V-W might fall in the way she did, i.e., over her Shih Tzu, during a refreshment break? V-W says that Sedgwick knew she had dogs in her home because "her dogs [were] a topic of conversation" when she worked in Sedgwick's Lake Mary office. She argued that "it is foreseeable that a person who is allowed to work from their home will take periodic breaks and may suffer injuries from falls regardless of the cause of the fall. Had she fallen on a piece of ice that had melted or a plumbing leak or some foreign object that was on the floor, this would still be a compensable accident."

The JCC found that Sedgwick's telecommuting agreement did not preclude pets in the home work environment, which makes a trip over a pet an obvious possibility. It's no different than if Sedgwick permitted dogs in its own workplace, for example, by allowing comfort/therapy dogs, by providing ADA

accommodations with service dogs (something many employers—including courts—have done) or by affirmatively embracing the dog-at-work experience (as many companies have done, including major ones like Amazon, Google, and Ticketmaster). *See* Brittany Shoot, *10 Pet-Friendly Companies Where It's Always Take Your Dog to Work Day*, FORTUNE (June 22, 2018), http://fortune.com/2018/06/22/take-your-dog-to-work-day-pet-friendly-companies/ (noting that "Take Your Dog to Work Day®" is the Friday after Father's Day). And the prevalence of pets in the home is substantial and increasing: A 2017-2018 industry survey found that 68% of U.S. households have pets, up from 56% in 1988. *See Pet Industry Market Size & Ownership Statistics*, AMERICAN PET PRODUCTS ASSOCIATION, https://www.americanpetproducts.org/press_industrytrends.asp (last visited Mar. 25, 2019). Of the 84.6 million homes having pets, 60.2 million had dogs, which is roughly 48% of all households. *Id.* Cats came in second at 38%. *Id.* A prior survey in 2012 found that the percent of households owning dogs was 36.5%, comprising 69.9 million dogs in 43.3 million homes. *See U.S. Pet Ownership Statistics*, AMERICAN VETERINARY MEDICAL ASSOCIATION, https://www.avma.org/KB/Resources/-Statistics/Pages/Market-research-statistics-US-pet-ownership.aspx (last visited March 21, 2019). Cats, again, were a close second at 30.4%. *Id.* These data make clear that employers should reasonably foresee that employees have dogs and other pets in their homes with their attendant benefits and risks.

By casting dog ownership as a purely and exclusively personal risk that doesn't "arise out of" employment as a matter of law, the Court thereby categorically prohibits coverage for workplace accidents even where an employer affirmatively allows pets in the workplace. As a result, accidents that occur in workplaces with pet-friendly policies are not covered under chapter 440 and the injured party's remedy is a personal injury lawsuit against the company, the dog owner, and perhaps others involved, which thwarts the point of the workers' compensation system. *See generally Taylor v. Sch. Bd. of Brevard County*, 888 So. 2d 1, 5 (Fla. 2004) ("In the ordinary case, when we are faced with a situation where an employee is injured on the job there exists a natural inference that the injury is covered by the Legislature's workers' compensation scheme. That is the

fundamental purpose of the law, to provide benefits for work place injuries in place of common law remedies."). Alternatively, employers with pet-friendly policies will have to enter indemnification agreements for workplace accidents or obtain supplemental insurance coverage, both options raising costs and stifling the modern trend that sees multiple benefits for canine-friendly workplaces (such as decreased stress levels, promoting a friendlier/relaxed atmosphere, attracting top young millennial talent, and so on). Not every business wants or can be pet-friendly (due to allergies, unsuitability of some workplaces for pets, and like issues), but judicially imposing a per se rule that "dogs = personal risk = no coverage" unnecessarily dampens workplace innovation and managerial creativity with no upside.

Finally, as Judge Bilbrey points out, this is a "course and scope" case, not an "arising out of employment" case. That's because the personal comfort doctrine, by its very nature, arises solely out of the need for employers to make allowance for authorized breaks to tend to personal needs during the workday; it is an exclusively work-related doctrine because it exists solely to facilitate the employer-employee relationship during work hours. It is casually connected to and originates solely from employment. Why else would a personal comfort break of short duration be authorized other than to facilitate the employment relationship during the workday? One doesn't take a personal comfort break unless one is at work (which explains why V-W tripping over her dog on a Saturday/Sunday wouldn't be compensable).  And wouldn't it be an oddity to exclude all *personal* risks from coverage for *personal* comfort breaks? Most items over which V-W might trip and fall in her kitchen or office could be dubbed as "personal" because she owns them and uses them for her personal benefit (chair, rug, etc.), but that doesn't provide a limiting principle for denying coverage. Instead, the better approach is the existing one in personal comfort cases, which limits "personal risk" to the defined category of pre-existing idiopathic conditions and focuses on the factual findings of each case to make an assessment as to whether the risk is a "neutral" one the employer allowed/prohibited and the foreseeability of the risk.

All this said, given that Sedgwick did not limit pets in V-W's work-at-home agreement, made no effort to control risks in the kitchen or other areas where home comfort breaks might occur, and knew or should have known that V-W had pets at home, the foreseeability of a slip and fall over a dog is clear, particularly in light of the data on the extent of home pet ownership and the growing trend of allowing dogs in the workplace. As the Supreme Court said fifty years ago, the "statutory phrase 'arising out of and in the course of employment,' which appears in most workmen's compensation laws, is deceptively simple and litigiously prolific." *Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 479 (1947). This dog-at-work litigation proves this timeworn point. Q.E.D.

## APPENDIX

### OVERVIEW

Ms. Valcourt-Williams, a 53 year old account claims adjuster, sustained injuries from a trip and fall accident on April 27, 2016 that she maintains occurred within the course and scope of her employment with Sedgwick Claims Management Services. The accident occurred at her home in Sierra Vista, Arizona while she was employed as a remote employee for the company under a telecommuting remote employment agreement. The E/SA contends that under the Telecommuting Agreement entered into between the parties, and given the undisputed details of Ms. Valcourt-Williams fall and any alleged injuries, the accident is not compensable as a matter of law.

\* \* \*

In regard to the issue on the merits of the Motion for Summary Final Order, the Claimant maintains she complied with the terms of the Telecommuting Agreement and that the accident arose out of and occurred within the course and scope of employment consistent with the case law governing the personal comfort doctrine. The E/SA submits that the accident did not arise out of employment and as such its compensability should be denied. Given the

36

undisputed facts in this case and for the reasons stated below I find the claimant's accident of April 27, 2016 is compensable and that the Claimant's accident arose out of and in the course and scope of her employment.

Claimant was hired by the Employer in 2011 and she worked in the Lake Mary office of the Employer until December of 2014 when she and the Employer entered into a Telecommuting/Remote Work Agreement (hereinafter referred to as Telecommuting Agreement). This agreement provided that the Claimant would create a work environment in her home for the employer. I find her home became her office during her regular working hours which were from 7am-3pm Lake Mary, Florida time.

Pursuant to the Telecommuting Agreement, Claimant converted a room in her town- home to an office specifically designated for her adjusting work with Sedgwick. As part of her employment, she was required to work specific hours and was allowed to take periodic breaks just as though she was working in the Sedgwick office in Lake Mary, Florida. She was required to be working from 7am to 3pm Lake Mary, Florida time. Her designated work location was from her home in Sierra Vista, Arizona. She was required to set up specific equipment, some of which was provided by the Employer, in her home and convert some space in her home to accommodate the office set up required by the Employer. Under the Telecommuting Agreement, the Employer had the right to inspect her work premises and review her work situation for safety and to make sure that she had a comfortable working situation. The Employer never did inspect or view her home office set-up either in person or by video or photographs. The Telecommuting Agreement did not limit the personal property that the Claimant could have in her home. The agreement notably required the office space to be free from hazard. Yet there is no evidence of hazard in the office space to suggest that the claimant was non-compliant with the agreement.

The facts are not in dispute. Claimant suffered and accident during the course of her employment when she had

taken a mid-morning break to get a cup of coffee. She uses a bedroom on the second floor of her two-story townhome as her dedicated home office. On April 27, 2016 at 7:00 a.m. Pacific Standard time (10:00 Eastern) she suffered her accident. According to her un-contradicted testimony the Claimant begins work at 4:00 a.m. Pacific Standard time in order to work for her employer for its Florida hours of 7:00 a.m. until 3:30 p.m. Her accident occurred when she left her upstairs office and went downstairs to go into the kitchen. She retrieved a cup from the cupboard to make some instant cappuccino and when she turned around she tripped over her dog and fell landing on her right knee and hip sustaining according to her, injuries. As to the extent there may be justiciable controversy as to whether an injury occurred, such matter is not a proper subject for a motion for summary final order and will ultimately be decided from consideration of the totality of the evidence produced and received at the final hearing.

The accident was reported to her employer immediately after she completed making her coffee and returned upstairs to her home office. The parties acknowledge that the accident occurred during the time period the claimant was to work for the employer. Claimant represents that she owned dogs when she worked for the Employer in the Lake Mary office from 2011 through 2014. Regardless of whether this is true or not, the Telecommuting Agreement does not limit the Claimant's ability to own and possess pets in her home office.

I find the Claimant's April 27, 2016 accident arises out of her employment and is therefore compensable. I find the fall, which was accidental, occurred during her normal work hours and at the time that it did as a result of her refreshment break from work for the employer. I find the comfort break was reasonable and to be anticipated and foreseeable by the Employer. The claimant was not in an area that she was forbidden to be and was in the kitchen of her home which would be similar to the break room at an office. The fact that the claimant was allowed to operate out of her home, I find that it was reasonably foreseeable to the employer that the Claimant would take periodic breaks for

38

her comfort to attend to personal needs including coffee breaks and bathroom breaks. I further find that the claimant attending to a reasonable personal comfort needs is conducive to the facilitation of the employment. Thus I find from the evidence presented no deviation from employment and no temporary abandonment of the job can be reasonably inferred. I find that her comfort break was not in violation of any company rule or was shown in the Telecommuting Agreement to be prohibited. Available use of her kitchen and bathroom would be necessary to meet her personal comfort needs.

I do not find that at the time of her accident the claimant was on a purely personal mission having no relationship from work nor do I find that the Claimant took any affirmative action that took her out of her normal work and into a purely personal situation. The facts in this case in my opinion are clearly distinguishable from the facts in Sentry Insurance Company v.Hamlin, 69 So.3d 1065 (Fla. 1st DCA 2011). In *Sentry*, the worker was not pursuing personal comfort but rather was on a purely personal mission of attempting to recover personal items from his vehicle that was being repossessed and being towed away at the time of his injury. None of the items he was trying to retrieve were related to work and he took the affirmative action by going into his repossessed vehicle while it was being towed away. It was by those personal efforts that the workers' injury was caused. He was performing an activity clearly of no benefit to the employer whatsoever. The claimant here was obtaining refreshment and nourishment to continue in her work for the employer.

The E/SA argues that the accident was not a work created risk. But this tribunal rejects this argument as clearly the Claimant was in the course and scope of her employment at a mid- morning break. She was on a work permitted break in a "break room" of which the Employer either knew or should have known was a place where she would getting [sic] something to drink which is permitted by her employer. It was a neutral risk as permitted under the Sentry Insurance Company case analysis. I find the

Employer imported the risk into the claimant's home by authorizing and permitting a remote office to be established with reasonable expectations that comfort and refreshment breaks would be required during her eight hour work day. The Employer by virtue of the Telecommuting agreement imported the work environment into the claimant's home and the Claimant's home into the work environment. The Employer's Telecommuting Agreement did not restrict the area where she could take breaks, where she could use the bathroom or what personal property she could keep in her home, including pets. Sy Jenkins, the adjuster for the E/SA, admitted that the Telecommuting Agreement did not restrict the Claimant's ability to have pets in her home. He further admitted that the Employer had the right to inspect and obtain photographs of the Claimant's work environment and never asked to do either. The Employer created to my mind what is tantamount to a satellite office for the Employer from which the Claimant was working and with it the risk of injury inside the home during normal working hours and conditions as long as the Claimant would be within the course and scope of her employment.

I find that the claimant was required to get up early and work in order to accommodate the employer's schedule in Lake Mary, Florida. Therefore she had to get up at 4:00 a.m. Pacific Standard time (an extremely early time for most people) in order to be at work for the employer in Florida at 7:00 a.m. It was reasonably foreseeable that the claimant would have to take comfort or refreshment breaks and the logical place with which she could do so was in her home kitchen and bathrooms. Such personal comfort activities provide a benefit to the employer and are reasonably incidental to the performance of her work activities. Therefore I find the accident indeed flowed from the employment as a natural consequence and that taking a break to get something to drink during normal working hours has a relationship to her work and is a necessary function of her being able to continue to work for 8 hours during the day. _Bayfront_ _Med. Ctr. v. Harding,_ 653 So.2d 1140 (Fla. 1st DCA 1995) I do not find as the E/SA argues

40

that the Claimant imported the risk into the work place. I find the tripping over the dog would be no different than if she had slipped on a liquid substance on the floor, on a lose kitchen floor mat, or over her own two feet. I find the accident would be compensable.

In regard to the above findings I do not find that the accident was distinctly and wholly personal in nature. Claimant was not carrying out a mission that was purely personal and not related to work, incidentally or otherwise. Had the claimant been playing with the dog and was injured in the process of doing so, then I would find the accident would not be compensable, that there would be no job connectedness and that there would indeed be a deviation from employment to otherwise bar compensability. Such was not the case here. Thus this case is distinguishable from the trial level case of Kimberly Shepherd v. The Pantry, 13-013620WWA (Decided 12/20/13) that the E/SA offers for my consideration. And the facts in this case are also significantly different from the *Sentry* case upon which the E/SA relies.

In summary I find the claimant complied with the Telecommuting Agreement. Her home office (upstairs bedroom dedicated as her office) was apparently free of any obstructions and included those items required to make the office safe and functional. At least there was no evidence that it was not. There is no showing that the accident actually occurred in the home office because of an obstruction therein. Furthermore the agreement does not exclusively deny all accidents that occur in other areas of the home which appears to be the suggested argument in the E/SA' s motion. The specific language is that, "injuries occurring in other locations in Colleague's home *ordinarily* will not be covered." As heretofore alluded to, I find it is reasonable that accidents that occur in the bathroom or kitchen may be compensable as those areas would be necessary for a worker to meet their personal comfort needs. I find that it would be most illogical for the claimant to leave her home in order to meet those personal comfort needs. Especially given the claimant gets up as early as 4:00 a.m.

41

in order to render the adjusting services to her employer in Florida. Meeting her personal comfort needs adheres to the benefit of the employer and flows from the employment as a natural consequence. *Holly Hill Fruit Products, Inc. v. Krider*, 473 So.2d 829 (Fla. 1st DCA 1985) It is foreseeable that the claimant may want and may need to take a coffee break to keep her mind alert and to remain focused in her work. It is reasonable to conclude that the claimant who is permitted to work from her home would go to her kitchen on breaks. I find that she did not leave her work premises at the time of the injury as she was in an area in her general and necessary work environment. I find there is indeed the connection between the Claimant's employment and her accident which arose from her employment. I find the personal comfort doctrine does apply in this case notwithstanding the E/SA's protestations to the contrary. Lastly I find the claimant did not do anything affirmatively to cause her accident. It was an unexpected event or result that happened suddenly.

I do not find under these facts presented that the claimant imported her personal property, the dog, as to affirmatively cause this claim to be non-compensable. Additionally there is no clear and undisputed evidence that there was any personal medical condition of the Claimant that caused her fall. As such her fall at this juncture is found to be compensable. *Walker v.Broadview Assisted Living*, 95 So.3d 942, (Fla.1st DCA 2012)

In order for summary judgment to be granted, there must be no genuine issue as to any material fact and one of the parties must be entitled to judgment as a matter of law. "Summary judgment is proper only where the pleading and record do not reflect conflicting issues of material fact." See ***Levey G. Getelman, 408 So.2d 663,665 (Fla. 3rd DCA 1981).*** If issues of fact exist and the slightest doubt remains, summary judgment cannot be granted.

All doubts as to the existence of genuine issues of material fact are to be resolved against the moving party. The moving party is required to produce probative evidence

indicating conclusively that genuine issues of material fact do not exist. Until such time as it does so, the opposing party is under no obligation to show that issues remain to be tried. See ***Holl v. Talcott, 191 So.2d 40, 43 (Fla. 1966)*** and ***Fletcher Co. v. Melroe Mfg. Co., 261 So.2d191, 193 (Fla. 1st DCA 1972).*** Once the moving party introduces evidence of its prima facie right to summary relief, the non-moving party must produce competent counter evidence. Simply asserting that an issue of fact exists will not suffice. See ***Landers v. Milton, 370 So.2d 368 (Fla. 1979)*** and ***Almand Construction Co.• Inc.• v. Evans, 547 So.2d 626, 628 (Fla. 1989).***

Upon review of the record submitted, considering the arguments of counsel and being otherwise advised in the premises, I find that there are no genuine issues of material fact as to only certain issues.

a. I find that the Claimant was in the course and scope of her employment.

b. I find based on the above that she had an accident during her normal working hours on the work premises established by the Telecommuting Agreement and that her accident and possibly her injuries arose out of and in the course of her employment as a Telecommuting Employee working from a satellite office of the Employer.

c. I find that the Claimant sustained a compensable workers' compensation accident when she fell on her mid-morning break and was reportedly injured as a result of that fall.

d. I reserve jurisdiction to determine what injuries, if any, were directly related to her fall of April 27, 2016 and this will be determined following the final hearing on November 8, 2016.

WHEREFORE IT IS HEREBY ORDERED AND ADmDGED that:

The Employer/Servicing-Agent' s Motion for Summary Final Order is DENIED, and I find the

Claimant sustained a compensable workers' compensation accident on April 27, 2016 which arose out of and in the course of her employment with the Employer.

DONE AND ORDERED in Chambers in Orlando, Orange County, Florida.

Honorable W. James Condry Judge of Compensation Claims
400 W. Robinson Street, Suite 608-North Orlando, Florida 32801

James N. McConnaughhay of McConnaughhay, Coonrod, Pope Weaver, & Stern, P.A., Tallahassee, and Elizabeth V. Bogle, Pensacola, for Appellants.

Bill McCabe, Longwood, and Glen D. Wieland, Orlando, for Appellee.